JOHN A. TUCKER v. ESTHER N. TUCKER, Executrix of the Estate of A. C. TUCKER, Deceased, Appellant, and GEORGE F. TUCKER v. ESTHER N. TUCKER, Executrix of the Estate of A. C. TUCKER, Deceased, Appellant.

**Direction of verdict.** Where no other conclusion could properly be 1 drawn from the evidence than that a valid gift of certain certificates of deposit and shares of bank stock had been made, a verdict in favor of the donee was rightly directed.

**Gifts:** MONEY IN BANK: WHEN COMPLETE. A gift *inter vivos* be-2 comes complete when the intention of giving is fully consummated by a transfer of all right to and dominion over the thing given: and this rule applies to a deposit of funds in a bank, whether represented by passbook or certificate of deposit, when transferred by assignment and delivery.

**Same:** CORPORATE STOCK. A gift of corporate stock is complete by 3 assignment and delivery with authority to effect a transfer on the books of the corporation.

**Same:** DELIVERY. Delivery directly to the donee is not essential to 4 a complete gift: it may be to an agent or trustee if made with the intent of the donor to relinquish all control over the property and to invest title in the donee: nor is it material that enjoyment is postponed until the death of the donor.

**Same:** TEMPORARY POSSESSION BY DONOR. Where there has been a 5 complete gift of certificates of bank deposits or shares of stock,

the mere fact that temporary possession has been acquired by the donor for the purpose of collecting reserved interest or dividends, without intent of reinvesting him with the title, will not affect its validity.

**Evidence:** HARMLESS ERROR. Erroneous exclusion of evidence is harmless where the answers desired, if taken, could not have affected the result.

*Appeal from Linn District Court.*— HON. MILO P. SMITH, Judge.

TUESDAY, MAY 5, 1908.

EACH action was for the recovery of the possession of a certificate of deposit. In the last, six shares of bank stock also were claimed. In each a verdict was directed for the plaintiff therein, and judgments entered accordingly. The defendant appeals.— *Affirmed.*

*Charles W. Kepler & Son,* for appellant.

*Voris & Haas,* for appellee.

LADD, C. J.— A. C. Tucker died testate May 15, 1906, leaving a widow, the executrix, and two sons, the respective plaintiffs, children by a former wife. On January 11, 1905, he had deposited in the Coggon State Bank the sum of $4,-500, and a like sum March 9th of the same year, receiving certificates of deposit from the bank bearing interest at the rate of five per cent. per annum upon return after the lapse of a year. The cashier testified that about the middle of November, 1905, at deceased's request, he called at his house and wrote across the back of the certificates first mentioned, " Pay to George F. Tucker," and on the back of the last, " Pay to John A. Tucker," and signed each indorsement. As George was then in Colorado, he handed the one indorsed to him to John A. Tucker, with the request that the latter take care of it for his brother, and John then placed it in

a safety box in the bank, where it remained until January 10, 1906, when A. C. Tucker removed it therefrom, and, in order to draw the interest thereon, surrendered it to the bank, which issued another, which was placed in the safety box, where it remained until his death. The certificate of January 10, 1906, was in words following: " The Coggon State Bank, Coggon, Iowa, Jan. 11, 1906. $4,500.00. No. 5,702. This certifies that there has been deposited in this bank forty-five hundred dollars, payable to the order of A. C. Tucker, or to George F. Tucker in case of death of A. C. Tucker, on the return of this certificate properly indorsed twelve months after date, with interest at five per cent. per annum. Interest to cease at maturity. N. B. Richardson, Cashier." George was advised of this a couple of days later. The cashier also testified that at the same time deceased handed the certificate dated March 9th previous to John, saying that it belonged to him, and he also assigned to him six shares of stock in the bank, with authority to transfer on its books, and handed all these to John, who placed both the certificate of deposit and the certificate of shares in the safety box; that in passing the above papers deceased reserved to himself the interest on the two certificates and the dividends on the stock, stating that the principals were the boys'; that on March 9, 1906, deceased withdrew the certificate of deposit of that date a year before, and surrendered it in order to obtain the interest. Thereupon the bank issued another like it, save that it bore the above date, and after deceased had indorsed it, " Pay to the order of John A. Tucker," it was placed in the safety box. Some months after the certificates first issued were surrendered, in order to aid the bank in keeping its records, John wrote his name on that claimed to have been given him, and the name of George on that held for him. The cashier further testified that deceased had stated to him upon making the deposits that as he had acquired the money through their mother, he wished the money to go to his

sons, and at the time the certificates were turned over to John he had said to the cashier that he wanted them to belong to the boys. The safety box had been assigned to deceased and a key thereto given him, because a director of the bank, but he had shared its use for several years with his son John. Upon his death these certificates, with some gold, were found in the box, the key to which was found on the person of deceased. There was testimony tending to show that he had procured the key of John a few days previous, and that shortly before he died he requested him to take it from his pocket, though this was in dispute. On this evidence the court directed a verdict for the plaintiff in each case.

Appellant insists that the issues should have been submitted to the jury. As only the cashier, John, and the deceased were present at the alleged delivery, there was no

1. DIRECTION OF VERDICT. way to controvert the testimony of the cashier except by the circumstances and any inherent improbability of his story, for, as death had closed the mouth of deceased, the law closed that of John. The cashier's testimony of the deceased's intention to make the gifts was strongly confirmed by the indorsements of the assignment on the back of the certificates and by the manner of the renewals, and was not contradicted by any circumstance in the case. So, too, was his statement with respect to the reservation of the income corroborated by the forms of the renewals, as these indicate a purpose to enable the sons to hold the principals. The use of the box by John may not have been extensive, but he had had papers in it with the consent of his father, and, besides, if the gifts had been completed, the certificates might have been left with deceased for safe-keeping without impairing the title of the sons. The mere fact that the key to the box was found on the person of deceased is not of much significance under the circumstances, especially as he had procured it of John but a few days previous. No evidence inconsistent with the

theory of gift was introduced, and, in so far as appears, the cashier was a disinterested witness.   We are of the opinion that no other conclusion properly could have been drawn from the evidence than that the certificates of deposit and shares had been delivered, and therefore that the cases were rightly withdrawn from the jury.

To constitute a valid gift *inter vivos,* the intention to make it must be satisfactorily established, and this intention must have been executed by actual, constructive, or

**2. Gifts: money in bank: when complete.** symbolical delivery of the thing proposed to be given without power of revocation.   In other words, there is no gift until the intention of giving is fully consummated by the donor transferring all right to and dominion over the thing given to the donee.   *In re Brown's Estate,* 113 Iowa, 351; *Furenes v. Eide,* 109 Iowa, 511.   This rule applies to choses in action duly assigned, and gifts of funds on deposit in banks, whether represented by passbook or certificates of deposit, by assignment and delivery to the donee, and has been approved in cases too numerous for citation.   See *Foster v. Murphy,* 76 Neb. 576 (107 N. W. 843).   *Shugart v. Shugart,* 111 Tenn. 179 (76 S. W. 821, 102 Am. St. Rep. 777); *Cowen v. Bronsville First National Bank,* 94 Tex. 547 (63 S. W. 532, 64 S. W. 778); and cases collected in 20 Cyc. 1204–1206.

The law is equally well settled that a gift of corporate stock may be made by the assignment of the certificate of shares and manual delivery thereof, the only conflict being

**3. Same: corporate stock.** as to whether a transfer on the books of the corporation is essential.   The weight of authority seems to favor the proposition that such transfer is not essential.   See *First National Bank v. Holland,* 99 Va. 495 (39 S. E. 126, 55 L. R. A. 155, 86 Am. St. Rep. 898); 20 Cyc. 1202.   The point is saved by our statute, however, under which this court has held that assignment thereof, with authority to transfer on the books upon delivery, passes title thereto as between the parties and is valid.   Section 1626,

Code; *Hershire v. First National Bank,* 35 Iowa, 272; *Courtright v. Deeds,* 37 Iowa, 503.

Nor is delivery directly to the donee essential to a gift. The rule is well settled that delivery to a third person as agent or trustee for the use of the donee, and under such

**4. Same: delivery.** circumstances as indicate that the donor relinquishes all control over the property and intends to vest title in the donee, is quite as effectual as manual delivery directly to him. See *Furenes v. Eide, supra; Hogan v. Sullivan,* 114 Iowa, 456; cases collected in 20 Cyc. 1198. If the gift is absolute, the mere postponement of the enjoyment until the death of the donor is not material, and will not defeat it. *Schollmier v. Schoendelen,* 78 Iowa, 426; *Hogan v. Sullivan,* 114 Iowa, 456, and cases cited therein; *Scrivens v. North Easton Savings Bank,* 166 Mass. 255 (44 N. E. 251). In *McNally v. McAndrew,* 98 Wis. 62 (73 N. W. 315), a father indorsed an assignment on certain notes and the mortgages securing them, and gave them to his son with the understanding the donor was to have the interest on them so long as he lived; and subsequently the notes were returned to him to enable him to collect the interest, and were found among his papers at his death. The court sustained the gift, and held the circumstances not to show a revocation. To the same effect, see *Martin v. Martin,* 170 Ill. 18 (48 N. E. 694). In *Calkins v. Equitable Building & Loan Ass'n,* 126 Cal. 531 (59 Pac. 30), bank stock was assigned and delivered as a gift, with the reservation of dividends, and the title to the stock was held to have passed. *Davis v. Ney,* 125 Mass. 590 (28 Am. Rep. 272); 14 Am. & Eng. Ency. of Law (2d Ed.)1044.

The test seems to be whether any interest in the property itself has been retained, as distinguished from the mere use or enjoyment. It is needless to add that, where there

**5. Same: temporary possession by donor.** has been a completed gift, the mere fact that naked possession has been acquired by the donor for the temporary purpose of enjoying the use

only, as for the collection of interest on deposits in a bank or the dividends on stock therein as in this case, without intent to reinvest him with title, will not disturb it. *Martin v. Martin, supra; McNally v. McAndrew,* 98 Wis. 62 (73 N. W. 315). And, of course, any act of the donor after a completed gift not consented to or acquiesced in by the donee will not affect the title in the latter. *Holmes v. McDonald,* 119 Mich. 563 (78 N. W. 647, 75 Am. St. Rep. 430); *Jacobs v. Jolley,* 29 Ind. App. 25 (62 N. E. 1028).

The mere statement of these well-established principles leads to the inevitable conclusion that the gifts of the certificates of deposit and shares of stock were completed. The intention that his sons should have them, and that in executing the assignments thereof and their manual delivery with such assignments to John A. Tucker with the expressed purpose of giving them, leaves no escape from the conclusion that the gifts were consummated. If the certificates of deposit were surrendered, this was with the sole object of complying with the requirements of the bank in procuring the interest. They were evidences of the funds in the bank which then belonged to the sons, and their title thereto was not affected by the substitution of other certificates without their consent. The second certificate indorsed to John was like the first, save in the matter of date, but the certificate issued in the place of that assigned to George was payable " to order of A. C. Tucker or to George F. Tucker in case of death of A. C. Tucker." Neither George nor the person in whose care the certificate had been left was consulted as to this change, and the evidence is conclusive that it was made only to enable the donor to draw his interest, and without any purpose on the part of deceased to revoke the gift or assert title to the fund. After the fund had passed irrevocably to George, it is idle to contend that the donor could acquire it again without some act of the donee indicating a purpose to revest him therewith. See cases last above cited. The present certificates merely evidence the

funds transferred to these plaintiffs by the delivery of the first certificates, and they are entitled to possession of them.

III.    Appellant complains of the court's rulings on the admissibility of evidence.    Most of these were correct in principle, while others may be sustained as calling for repeti-
6. Evidence: harmless error.     tion.    Several might well have been different, as that by which appellant was not allowed to show the extent of deceased's estate as bearing on his intention.    But if the answers to the questions to which objections should have been overruled had been given favorably to appellant, the result would not have been changed. For this reason these rulings were without prejudice and, as they involve no doubtful questions of law, are not reviewed.

The judgment in each case is *affirmed*.