IN RE ESTATE OF KATHERINE WINKLER.

D. J. HEMMY, Administrator, Appellee, v. CARL WINKLER, Appellant.

No. 45896.

AUGUST 11, 1942.

REHEARING DENIED NOVEMBER 27, 1942.

J. O. Boyd, of Keokuk, for appellant.

John E. Newkirk, of Keokuk, for appellee.

HALE, J.—■ The facts in this case were stipulated and are substantially as follows: The applicant, Carl Winkler, was the brother of Katherine Winkler, deceased, and they were the children of Theresa Winkler, who died intestate February 16, 1937. On December 13, 1935, the Keokuk Savings Bank & Trust Company issued passbook No. 9801 to Theresa Winkler and Katherine Winkler, and in the original signature card, in possession of the bank, were the words stamped, "as joint tenants with the right of survivorship and not as tenants in common." On December 24, 1937, Carl Winkler and his sister signed another card called a "Joint Account Payable to Either or Survivor." This additional signature card, attached to the original card and dated December 24, 1937, is as follows:

"Joint Account Payable to Either or Survivor.

"We agree and declare that all funds now or hereafter deposited in this account are and shall be our joint property and owned by us as joint tenants with right of survivorship, and not as tenants in common, and upon the death of either of us any balance in said account shall become the absolute property of the survivor. The entire account or any part thereof may be withdrawn by or upon the order of either of us or the survivor. It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

Katherine Winkler,<br>Carl Winkler."

The sister Katherine Winkler died intestate May 11, 1941, and D. J. Hemmy was appointed administrator of her estate. Katherine had rented a safe-deposit box and had the key to this box in her possession at the time of her death, and in this box the passbook No. 9801 was found by the administrator. By stipulation it was agreed that at all times the amount of money reported in the account, No. 9801, was the property of Theresa Winkler and Katherine Winkler from the date of opening the

account until the death of Theresa Winkler in 1937, when it became the property of Katherine Winkler, whose property it remained until December 24, 1937, when Carl's name appeared on the account for the first time.

The key to the safe-deposit box was not obtained from the applicant but from his brother Louis Winkler. The request of the applicant to the court is that an order issue directing D. J. Hemmy, as administrator of the estate of Katherine Winkler, deceased, to turn over to this applicant the bankbook hereinabove described, and for such other and further orders as may be proper.

On the facts so stipulated, the court held in the action, which was tried as an action at law, that Katherine Winkler had always retained the passbook, and her failure to deliver it showed her intent not to make a gift thereof, and held that the fund represented by the bankbook belongs to the estate of Katherine Winkler, and the application of Carl Winkler should be denied. From this judgment of the court, rendered October 28, 1941, the applicant filed a motion to vacate the findings and judgment and motion in arrest of judgment. These motions were overruled and applicant appeals.

The applicant urges that the court erred in holding that the undisputed facts did not support a joint tenancy, and in holding that before the parties could create a joint tenancy it was necessary to establish as a fact that Katherine Winkler intended to make a gift of the bank account to Carl Winkler, and also in holding that there should be a transfer of the fund in the bank account from Katherine Winkler to Carl Winkler for a valuable consideration. And also it is claimed that there was error in holding that Carl Winkler was not entitled to the fund evidenced by the passbook because the passbook was in the possession of Katherine Winkler at the time of her death.

The question in the case is whether or not under the facts there was created a joint tenancy of the deposit. If there was no such joint tenancy, then the applicant must fail. If there was such joint tenancy, there is no evidence that it was in any way defeated.

It is stipulated that, after the death of her mother the deposit was the property of Katherine Winkler until December

24, 1937, the date of the execution of the signature card. The administrator suggests in argument that there is no showing that the card was actually signed. Of this fact, however, there appears little doubt. It was a signature card, introduced in the trial as an exhibit, and was so referred to. The judge had the exhibit for inspection and his opinion refers to it as signed. We may conclude that it was so signed.

"An estate in joint tenancy is one held by two or more persons jointly, with equal rights to share in its enjoyment during their lives, and having as its distinguishing feature the right of survivorship * * *." 14 Am. Jur. 79, section 6.

It may exist in almost any kind of property, including bank accounts. Originally favored at common law, it is not so favored now, but it is recognized by the courts of this state. Wood v. Logue, 167 Iowa 436, 149 N. W. 613, Ann. Cas. 1917B, 116; Hruby v. Wayman, 230 Iowa 653, 298 N. W. 639, and cases cited; Stonewall v. Danielson, 204 Iowa 1367, 217 N. W. 456. The case of Fleming v. Fleming, 194 Iowa 71, 174 N. W. 946, recognizes that such an estate may be created, but under the facts in that case it was held that the relation created was that of partnership rather than joint tenancy.

"The grant need not be. of a formal character. Thus, the courts of many jurisdictions hold that when a person opens a bank account in the name of himself and another with the intention of allowing each a present right to draw upon the account, with a survivorship in the balance remaining at the death of either, he thereby creates a joint tenancy in the account." 14 Am. Jur. 82, section 11.

See, also, 7 Am. Jur. 299 et seq., section 425 et seq. From this definition it is thus seen that intention is a vital element.

Under the heading of "Banks," the subject of deposits of two or more depositors is discussed in 7 Am. Jur. 300–308, sections 426–436. Under the subtitle of "Gift in Praesenti while Retaining Interest in Donor," the text states:

"If, therefore, the general rule applicable to gifts, that the donor must divest himself of all power over the gift, is to be

applied, it seems that the gift in such a case must fail. This is the view of some cases. The majority of cases, however, hold that if the intention of the donor is to vest a present right to share in the deposits constituting the joint account, such an act constitutes a gift that can be sustained. This is likewise true, and the transaction constitutes a completed gift, despite a reserved power of revocation. Delivery of the passbook into the hands of the donee is not essential to complete the gift so far as the donee's' right of survivorship is concerned. The retention by the donor of the passbook is evidence of an intent not to vest a present interest in the donee, but it is not conclusive; the donee may show by other facts and circumstances an intent to make a present gift of a joint interest in the deposit. If, though, the passbook is delivered to the donee, that fact merits consideration.'' 7 Am. Jur. 304, section 431.

██ Under our holdings, however, that the possession of one would be the possession of both, it would seem unimportant that the book remained in the safe-deposit box. The administrator urges in support of his views the facts of delivery and possession. We do not think any manual delivery necessary, and, in many instances, it would hardly be possible, or at least not practicable. If the instrument executed was valid, then the possession of the deposit or the book evidencing the deposit of either joint tenant was the possession of the other, and it would be immaterial as to who held the actual manual custody. Martin v. Fritz, 194 Iowa 740, 750, 190 N. W. 514; Tucker v. Tucker, 138 Iowa 344, 345, 116 N. W. 119; In re Halaska's Estate, 307 Ill. App. 183, 30 N. E. 2d 117; Abegg v. Hirst, 144 Iowa 196, 122 N. W. 838, 138 Am. St. Rep. 285.

The question of joint tenancy has been discussed in various decisions of this court. We may note some of the cases. The case of Taylor v. Grimes, 223 Iowa 821, 823, 273 N. W. 898, 900, is cited by both the administrator and the applicant. An examination of this case shows that the action for accounting and claimed ownership was based upon a deposit for which the signature card read:

"First Federal State Bank, Des Moines, Iowa.
"Below, please find duly authorized signatures which you

will recognize in the payment of funds or the transaction of other business on our account." (Date and signatures.)

Compare this card with the card hereinbefore set out. The Taylor case was based and tried throughout on the theory of a gift, "and the sole question for determination is whether Mrs. Elliott made a gift of the savings account to Mr. Grimes on December 2, 1932." The evidence offered was upon that theory, and the district court and this court held that the evidence was insufficient. A deposit such as indicated in that case, in order to effect a transfer to the codepositor, must be shown to have the attributes of a gift. This was not so shown. No suggestion or claim of joint tenancy appears in the case. A comparison of the bases of the claims in the two cases shows their dissimilarity.

Andrew v. Citizens St. Bk., 205 Iowa 237, 243, 216 N. W. 12, 14, involved a certificate of deposit "payable to the order of self or Hazel Pent." The court said:

"Appellant also insists that the burden was upon Hazel Pent to allege and prove that a gift of the certificate was intended and made to her by her mother."

The court considered the facts and held that, while the facts were meager and inconclusive, yet the evidence indicated such gift. As one reason, the court said:

"The fact that the certificate remained unpaid and unchanged is some evidence of the mother's intention."

Staton v. Vernon, 209 Iowa 1123, 229 N. W. 763, 67 A. L. R. 1200, was a garnishment case, in which exemption was claimed. The evidence showed that there the joint deposit was so made for convenience in paying bills and there was no intention to transfer title.

Hollingsworth v. Hollingsworth, 212 Iowa 1165, 235 N. W. 726, involved a deposit of the wife's funds to a joint account but provided for withdrawal only upon an order signed by both husband and wife, but did provide that upon the death of either the survivor should have the fund. The surviving wife was sued by the administrator, but the court's ruling, based on the in-

tent of the parties as shown, awarded the balance of the account to the wife as against the husband's administrator. It may be noted that, commenting upon the facts, the court refers to the various theories in such cases, the gift theory, the trust theory, and the joint-tenancy theory, but that this court had not definitely tied itself to any one of these particular theories.

In re Brown's Estate, 113 Iowa 351, 85 N. W. 617, holds merely that under the evidence certain certificates of deposit made to John and Mary Brown, or John or Mary Brown, constituted them joint owners at the time of John's death, and his undivided interest therein should be distributed as a part of his estate.

The court quotes from and the administrator relies largely on our recent case of Sinift v. Sinift, 229 Iowa 56, 293 N. W. 841. This carefully considered opinion by Justice Bliss is based upon the evidence, an analysis of which shows that there was no intent to create a joint ownership, and the case was determined upon the question of intention and the opinion so states. On page 62 of 229 Iowa, page 844 of 293 N. W., is the following statement:

"We agree that whatever may be the various defense theories, and whatever particular name may be given to each defensive theory, the controlling factor in the decision of this case, is the intent of John Sinift, as established by the entire record, taking into consideration his life and conduct in general, the making of the bank deposits and the purchase of the bonds in the manner shown, the testamentary disposition of his property, and the conduct of the defendant herself." And, on page 84 of 229 Iowa, page 854 of 293 N. W.: "This court has also held that regardless of the statute [Code, section 9267], the ownership of a deposit, payable to self or daughter, is determined by the intent of the depositor. [Citing Andrew v. Citizens St. Bk., 205 Iowa 237, 243, 216 N. W. 12, 15.] * * * We think the record fairly justifies a finding that there was never any intention on the part of either of them of so transferring ownership and control, but that it was a method adopted solely for convenience, very largely because of his physical condition."

And, on page 90 of 229 Iowa, page 857 of 293 N. W., refer-

ence is again made to the intention of John Sinift as controlling. So that the decision was based on the facts, the record of which was very extensive. An analysis of such facts would be of no value to the present inquiry, as the records in the two cases are so dissimilar as to make the holding in the Sinift case no precedent for the case at bar. The references quoted above, as do other statements in the opinion, show that in that case, as in this, and in all such cases, we must determine the intention of the parties to the deposit. Such intention would determine the case.

That much of the administrator's reason for denying joint tenancy is not consistent is shown by the stipulation, wherein it is agreed that title to the bank deposit from the death of Theresa Winkler, February 16, 1937, until December 24, 1937, was in Katherine. Yet Katherine derived ownership by virtue of her interest in the account held by her and her mother, Theresa Winkler, "as joint tenants and not as tenants in common," which account began on December 13, 1935. Katherine's title, which is stipulated, then arose in the same manner as in the disputed title of Carl. She could, under the facts presented in this case, have derived such title in no other way than by joint tenancy. It was the same account and even the same passbook, the name of Theresa being erased on December 24, 1937, and that of Carl written in.

Among reasons alleged by the administrator as to why there was no joint tenancy is that there was no showing of a consideration. The instrument relied upon (the signature card) was in writing, which imports a consideration. Code section 9440. Gary v. Northwestern Mutual Aid Assn., 87 Iowa 25, 53 N. W. 1086; Leedham v. Leedham, 218 Iowa 767, 770, 254 N. W. 61; Tucker v. Tucker, 138 Iowa 344, 350, 116 N. W. 119.

One difficulty with the argument of the administrator and with the authorities cited in support of such argument is that they refer almost entirely to the fact that the mere opening of a joint account does not constitute a joint tenancy. This may be assumed but such assumption does not determine the question under the facts in this case. Here we have the instrument creating the joint tenancy declaring in express terms the rights of the parties. The card, which we regard as a contract, shows

938

all the essential features of joint tenancy. It so declares and so designates the joint deposit.

The facts in this case also differ from many of the reported cases in that in such cases evidence was offered other than the mere instrument in question, in most cases on the question of intent. The intention of the parties is the controlling question, as stated in the Sinift case. Here the form of deposit, and the contract between the parties, in our view, indicated what their plain language expresses, that there was a joint ownership. If not so created, then it is difficult to imagine any form of words which would do so, and we would be forced to conclude, contrary to a long line of precedents, that a joint ownership in personal property cannot be created.

Under the facts stipulated, and from an examination of our rulings and the authorities cited, it is our opinion that, under the arrangement entered into with the bank and with each other, there was created a contract of joint tenancy, expressly so designated and with all the attributes of such a relation, and that under such contract the applicant was entitled to the possession of the bankbook and the deposit.

The judgment order of the district court is therefore reversed and the cause remanded for order in conformity to this opinion.—Reversed and remanded.

WENNERSTRUM, C. J., and MILLER, OLIVER, GARFIELD, SAGER, BLISS, and MITCHELL, JJ., concur.