Mrs. L. A. HYLAND et al., appellees, v. MARY A. STANDIFORD; CLAUDE M. CLOVIS, executor of estate of B. E. Standiford, deceased, and CLAUDE M. CLOVIS, guardian of property of Mary A. Standiford, incompetent, appellants.

No. 50435.

OCTOBER 17, 1961.

REHEARING DENIED DECEMBER 12, 1961.

Stephens, Thornell & Millhone, of Clarinda, for appellants.

Paul V. Nichols, of Shenandoah, for appellees.

SNELL, J.—This is an action in equity to determine the ownership and right to possession of shares of stock of American Telephone and Telegraph Company. The facts are not in material dispute. The conclusions to be drawn therefrom present the issue.

A trust estate created by residents of California provided for its termination after the death of a beneficiary for life. It

was then provided, "Upon such termination, the entire principal of the trust estate, or so much thereof as then remains, together with any undistributed income therefrom, shall be distributed to BENJAMIN EDGAR STANDIFORD, of Northboro, Iowa, if he be living, and if he be not living, then to his wife Mary Ann Standiford, and if she be not living then to" contingent beneficiaries not involved herein. Benjamin Edgar Standiford and Mary Ann Standiford both survived the termination of the trust.

The beneficiary for life died in June 1950. The assets in the trust estate, consisting of extensive real and personal property, included 54 shares of capital stock of American Telephone and Telegraph Company. On February 17, 1951, Benjamin Edgar Standiford, as succeeding trustee, assigned this stock to "Benjamin E. Standiford and (Mrs.) Mary A. Standiford, as joint tenants with right of survivorship and not as tenants in common." The 54 shares were then reissued by the company under date of February 28, 1951, to "Benjamin E. Standiford and Mary An. Standiford as joint tenants with right of survivorship and not as tenants in common."

Through the purchase and conversion of debentures and stock purchase rights between June 1951 and May 12, 1958, additional shares of stock, all issued in the same way, were acquired. One thousand shares in all were so issued and were evidenced by 16 separate certificates. One certificate for 100 shares is dated May 12, 1958. All others are dated prior to September 1957. The number of certificates (16) issued on six different dates over a period of seven years is significant in view of the claim that it was all a mistake and error.

The purchases of the additional shares were financed from the sale of other assets and from income over the Standifords' frugal needs.

Mr. Standiford was a successful investor of funds. From time to time, in order to purchase stock, money would be borrowed in anticipation of income. Notes with collateral clauses for borrowed money were signed by Benjamin E. Standiford. The notes were secured by stock assignments signed by both Benjamin E. Standiford and Mary A. Standiford. It is in-

teresting to note that these assignment signatures were guaranteed by W. H. Longman, then the cashier and now vice president of the lending bank. Mr. Longman is one of the plaintiffs in the present action. Apparently, from the premise of commendable precaution, Mrs. Standiford was not ignored. Her signature assigning the stock was required. Mr. Longman's position while acting as a banker does not bolster his present insistence that Mrs. Standiford had no interest in the stock.

On January 1, 1954, Benjamin E. Standiford and Mary A. Standiford rented a safe-deposit box at the bank. Mrs. Standiford was named as one of the lessees but her signature does not appear. There is no record that she ever attempted or had access to the box. Between January 2, 1954, and January 17, 1958, Mr. Standiford signed to enter the box 22 times.

There is no record that Mrs. Standiford ever had physical possession of the American Telephone and Telegraph stock separate from her husband. To what extent Mr. and Mrs. Standiford may have consulted and conferred about their business does not appear, but Mr. Standiford was the business head of the family. In letters to a cousin, he used the personal pronoun "I" in telling of his business deals and used the words, "I have", "I borrowed", "I bought", and other words of like import.

By 1955 Mrs. Standiford was in failing health. Since April 30, 1957, she has been confined in the Mental Health Institute as incurably insane. Benjamin E. Standiford was appointed guardian of her property. The guardianship inventory signed by Benjamin E. Standiford lists "joint title" in some real estate and general assets of personal property, "none." Mr. Standiford must have thought that his wife had some property rights. Otherwise there would have been no reason for a guardian of her property.

Mr. and Mrs. Standiford had no children.

On September 18, 1957, Mr. Standiford executed a will. This was after his wife's confinement in the hospital. He devised and bequeathed all his property to a trustee for the use and benefit of Mary A. Standiford "so long as she shall live." Subject to the life estate, Mr. Standiford bequeathed 100 shares

of American Telephone and Telegraph stock to his banker and 100 shares to each of two nieces. Six hundred shares were bequeathed to five of his wife's relatives. One hundred of the shares owned at the time of Mr. Standiford's death were acquired after the execution of his will. Specific devises and a residuary bequest disposed of the remainder of his property.

Mr. Standiford died November 27, 1958, survived by his incompetent widow but without issue. For Federal Estate Tax purposes, his estate, consisting of a home, farm land in Iowa and Missouri, bank accounts, farm equipment, government bonds and American Telephone and Telegraph stock, was valued at $348,923.27. Mr. Standiford's will was admitted to probate. Mr. Claude M. Clovis, Mr. Standiford's attorney, the draftsman of the will and the nominated executor, was appointed executor and qualified. Mr. Clovis was also appointed successor guardian for Mrs. Standiford.

After Mr. Standiford's death, a stock split resulted in the acquisition of 2000 additional American Telephone and Telegraph shares issued in the same names and form as before.

Mr. Clovis, as guardian of Mrs. Standiford, claimed all of the American Telephone and Telegraph stock for his ward as surviving joint tenant. An election to disavow the will has been made for the incompetent surviving widow. Just how much property there is other than what is claimed to be in joint tenancy does not appear.

Mr. W. H. Longman, the banker friend, Mrs. Hyland and Mrs. Justin, née Van Cleave, nieces of Mr. Standiford and beneficiaries under his will, feeling aggrieved by the prospective failure to receive property bequeathed to them, brought this action claiming that the words creating a joint tenancy were a mistake; that Mr. Standiford never intended to pass title; never parted with ownership or possession; that there was neither gift nor consideration; that Mr. Standiford was the owner and that they are entitled to possession and ownership under his will.

The trial court held that the property passed pursuant to the will and sustained plaintiffs' claims.

I. Together with the trial court, we regret the uncertain-

ties that frequently arise when property is held in joint tenancy. We are aware of the disappointment that follows when a benefaction fails because not subject to testamentary disposition. However, we cannot ignore plain and positive words and actions establishing property rights. A change in conditions does not act retrospectively in establishing an original intent.

■ The original source of the property now in dispute was a trust estate. The creator of the trust provided that the property should go to Mr. Standiford, if living, and if he be not living, then to his wife. While the provision for Mrs. Standiford was contingent, it did indicate the thinking of the parties that Mrs. Standiford might become the sole owner of the property. Mr. and Mrs. Standiford having no children, it was perfectly natural for them to think and provide that upon death of either the survivor should take whatever property they owned. Sixteen separate records of property ownership made on six different dates over a period of seven years created just such a right of survivorship. Not until after the failure of Mrs. Standiford's mental health was there any indication of a contrary intent. The use by Mr. Standiford of the personal pronoun "I" when referring to transactions he was handling is not very persuasive. Such a habit is common with many men. Certainly such usage is not sufficient to overcome plain and positive written records of title and ownership. Neither does failure to show activity by a wife in business affairs handled by her husband prove either lack of interest or ownership.

In 1957, with Mrs. Standiford confined in a mental hospital and described in the guardianship as "non compis [sic] mentis", Mr. Standiford, for the first time, did something that might conflict with the survivorship rights of his wife. By will, he attempted to control the ultimate testamentary disposition of the property. His efforts were "too little and too late."

II. The common-law unities of interest, title, time and possession necessary for the creation or determination of joint tenancies have lost their importance. There has been no comparable diminution of importance in questions of termination or severance.

The common-law presumption favoring joint tenancies has

been reversed by statute in many jurisdictions including Iowa. Section 557.15 of the Code (Chapter on real property) provides that conveyances to two or more in their own right create a tenancy in common, unless a contrary intent is expressed. Comparable provisions indicating legislative intent are found in section 637.3, the Simultaneous Death Act, and in section 450.3(5) relating to taxation.

Such statutes and the efforts of courts to relieve hardship cases have brought about a definite shift away from the four unities of the common law and to the intention theory. See Sinift v. Sinift, 229 Iowa 56, 293 N.W. 841. This trend and search for intent, however, does not permit courts to completely remake written instruments after death and insanity have sealed the lips of the principals.

The distinctive, and by far the most important, characteristic of joint tenancy is the right of survivorship. It is hard to think of any other good reason for creating a joint tenancy.

The words used in designating the ownership of the American Telephone and Telegraph stock were by direction of Mr. Standiford. No words more clear, explicit, free from misunderstanding nor technically correct could be used.

Wood v. Logue, 167 Iowa 436, 149 N.W. 613, holds that under our statutes there is a place in our law for a joint tenancy, with its characteristic incident of survivorship if the intent of the parties to the instrument to create it is clearly indicated by the language employed.

Switzer v. Pratt, 237 Iowa 788, 790, 23 N.W.2d 837, 838, involved a deed from the husband who was the record owner, to himself and his wife " 'as joint tenants and not as tenants in common, with the right of survivorship'." After a review and quotation from the authorities, it was held that the deed created a joint tenancy in the grantees and that the title was vested in the survivor. In the case now before us, the words used created a joint tenancy with right of survivorship and contained a clearly expressed intent. See also In re Estate of Miller, 248 Iowa 19, 79 N.W.2d 315.

III. An estate in joint tenancy may exist in personal property as well as in real estate. In re Estate of Miller, supra.

In re Estate of Winkler, 232 Iowa 930, 5 N.W.2d 153, and authorities cited.

IV. Cases involving government bonds and bank accounts have followed the contract theory. O'Brien v. Biegger, 233 Iowa 1179, 11 N.W.2d 412, analyzes the authorities and expressly adopts the contract theory concerning bank accounts. Much that is said in these cases is pertinent here.

In re Estate of Murdoch, 238 Iowa 898, 903, 29 N.W.2d 177, 179, involved a bank account and signature cards. In discussing evidence offered to show intent it was said:

"This court has long recognized the rule that in construing a written agreement, between the parties, the wording of a clear-cut and unambiguous contract must control in construing it and rules of construction apply only where there is ambiguity. [Citations] Upon the specific question, 9 C. J. S., Banks and Banking, section 286, states: 'The intent of the parties may indicate and determine the right of survivorship. Where no other evidence of intent is available, the form of the deposit may control; but when such intent is evidenced by a written agreement, the question of intention ceases to be an issue and the courts are bound by the agreement.' * * * We held in the Winkler case, supra, that such an agreement as we have here constituted a contract, consideration being presumed since it was in writing; that it was an agreement declaring in express terms the rights of the parties. We view the present writings, so-called signature cards, in the same light. Under our rules of construction, in the absence of a plea of fraud, duress, or mistake, we are bound by the plain and expressed terms of the agreement. Extrinsic evidence tending to change this expressed intent is not competent."

Hill v. Havens, 242 Iowa 920, 48 N.W.2d 870, reviews the chronological development of the rules and quotes with approval the statement in the Murdoch case.

The plaintiffs do not allege fraud or duress. They do plead mistake. In an attempt to support this allegation, they offer evidence as to the use of the personal pronoun "I" when Mr. Standiford referred to the stock; the fact that Mrs. Standiford never attempted physical access to the safe-deposit box;

and Mr. Standiford's attempted testamentary disposition of property. Such evidence shows that Mr. Standiford was handling the actual purchase of stock, and after his wife's incompetence, hoped to control the ultimate disposition of the stock, but it does not establish mistake incident to the manner nor at the time the stock was issued. As said in the Murdoch and Hill cases, supra, the evidence was not competent to show mistake in the original expressed intent.

Even if competent, the evidence was insufficient.

In the present case Mr. Standiford, in writing, by assignment of stock for transfer, directed American Telephone and Telegraph Company how to issue and handle the new stock. Such written directions may not be disregarded on the basis of mistake supported only by such evidence as we have here.

V. A showing of consideration in the creation of a joint tenancy by written instrument is not essential. An instrument in writing imports a consideration. Section 537.2, Code of Iowa; In re Estate of Winkler, supra.

VI. Lack of physical possession of the evidence of ownership is unimportant. The possession of one joint tenant is the possession of both. Manual delivery of a bankbook evidencing a deposit is not necessary. If the instrument creating the joint tenancy is valid, it is immaterial who holds the actual manual custody. In re Estate of Winkler, supra. The same reasoning applies to certificates of corporate shares.

In the case of Manning v. United States National Bank of Portland, 174 Ore. 118, 125, 148 P.2d 255, 259, 153 A. L. R. 922, 926, the Supreme Court of Oregon faced the problem resulting from the transfer of corporate bank stock from the husband to himself and his wife, the reissued stock being to " 'Edward D. Hendricks and Margaret M. Hendricks, and upon the death of either, the survivor of either.' " Subsequently the husband by will attempted to bequeath his surviving widow a life estate in the stock with the remainder to a grandson. The court held that the form of the instrument established a donative intent and that the rule to the effect that the retention of a passbook is not controlling applies with far greater force to the retention of a stock certificate. The court held that there was a consum-

mation of a gift in praesenti effected through the instrumentality of the contract between the corporation and Mr. and Mrs. Hendricks. The court further held that the right of survivorship in personal property, including corporation stock, may be created by express words such as were there used.

The Supreme Court of Ohio in In re Estate of Hutchison, 120 Ohio St. 542, 548, 166 N.E. 687, 689, in discussing the right of survivorship in stock in a corporation issued in the joint names of two persons said: "The fact that the certificate was in his possession and custody is relatively unimportant. It was little more than a 'scrap of paper.' It might have been lost or destroyed, but the records of the corporation would still have disclosed their joint ownership and right of survivorship."

▆ VII. While there are several procedures for the severance or dissolution of a joint tenancy, an attempted disposition by will is not one of them. A will speaks only from the death of the testator. The death of a joint tenant terminates his interest and leaves no part of the joint tenancy property subject to his will. Conlee v. Conlee, 222 Iowa 561, 269 N.W. 259.

▆ Appellees urge that there was a severance of the joint tenancy when Mr. and Mrs. Standiford pledged the stock as security for a loan and rely upon In re Estate of Baker, 247 Iowa 1380, 78 N.W.2d 863, 64 A. L. R.2d 902. In that opinion, by a sharply divided court, the majority holds that a severance of a joint tenancy results where a contract for sale of real estate is entered into by joint tenants and that the contract for sale results in an equitable conversion of the realty into personalty not held in joint tenancy. A vigorous dissenting opinion challenges the conclusion that a contract of sale by all the joint tenants works a severance and changes the character of the unpaid balance into a tenancy in common.

In Iowa, an encumbrance or mortgage, regardless of its phraseology, is regarded only as a lien on the property and not as an absolute conveyance. The Baker case does not support a holding that joint action of all joint tenants pledging stock as security where there has never been any further alienation or foreclosure constitutes such a severance as to defeat the right of a surviving joint tenant.

VIII. The American Telephone and Telegraph stock issued to Benjamin E. Standiford and Mary A. Standiford as joint tenants with right of survivorship and not as tenants in common was so issued by direction and not by mistake. There has been no severance except by death. Upon the death of Mr. Standiford, Mrs. Standiford became the owner. The stock was not subject to testamentary disposition by Mr. Standiford.

The case is reversed and remanded to the district court for the entry of a decree in accordance herewith.—Reversed and remanded.

All JUSTICES concur except BLISS, J., not sitting.