**Lois L. COFFMAN and Janet M. Farrell, Co-Executors of the Estate of Lester Adkins, Deceased, Plaintiffs-Appellants,**

**v.**

**Edythe A. ADKINS, Defendant-Appellee.**

No. 2–69373.

Court of Appeals of Iowa.

Aug. 30, 1983.

C.R. Hannan of Perkins, Sacks & Hannan, Council Bluffs, for plaintiffs-appellants.

Richard Peterson of the Peterson Law Offices, Council Bluffs, for defendant-appellee.

Considered by OXBERGER, C.J., and DONIELSON, SNELL, SCHLEGEL and HAYDEN, JJ.

HAYDEN, Judge.

Plaintiffs appeal from the trial court's decision determining that the defendant is the owner of certificates of deposit and bank accounts which defendant and decedent held in joint tenancy. We affirm the trial court's decree.

On December 1, 1969, the decedent, Lester Adkins, and the defendant, Edythe Adkins, nee Bledsoe, entered into an antenuptial agreement in which they retained the right to control and dispose of their separate estates as though no marriage had taken place. Each party agreed to relinquish all rights in and claims to the property of the other, including dower, support allowance, and distributive share rights.

Decedent and defendant were married on December 3, 1969. During the marriage decedent sold a farm which had been part of his separate property and invested part of the proceeds in certificates of deposit and bank accounts. These certificates and accounts were issued and opened in the names of decedent and defendant. On almost every occasion defendant was present when the funds were invested and, at decedent's request, executed signature cards indicating the creation of joint tenancy accounts.

The certificates were first placed in safety boxes in the home of decedent and defendant. Subsequently when the house was burglarized, they were transferred to a safe deposit box at a local bank. Defendant was present when the certificates were placed in the bank box and was again shown that they were issued jointly in both decedent's and defendant's names. Defendant had no access to the bank deposit box.

One of the certificates was later pledged as collateral on a note signed only by decedent. The note was subsequently set off against the certificate and the balance was given to the defendant.

After decedent's death plaintiffs, co-executors of his estate, filed a petition for declaratory judgment requesting the court to construe the antenuptial agreement as defeating defendant's right to the jointly held property.

On appeal, plaintiffs assert that: (1) the joint tenancies were invalid as being in contravention of the antenuptial agreement; (2) the element of delivery was absent and, therefore, the joint tenancies were incomplete gifts; (3) defendant violated her confidential relationship with decedent; (4) defendant made inconsistent statements regarding her right to the property after decedent's death and cannot now asset her entitlement to it; and (5) decedent's pledging one of the certificates as security for a loan severed the joint tenancy.

■ The trial court determined that the proceeding was primarily equitable in nature. Our review of an action for declaratory judgment tried in equity is **de novo.** *Ullmann v. Reed,* 258 Iowa 100, 102, 137 N.W.2d 690, 691 (1965). Although review is **de novo,** we give weight to the trial court's findings. *Luse v. Grenko,* 251 Iowa 211, 214, 100 N.W.2d 170, 172 (1959).

Plaintiffs strenuously assert that defendant's acceptance of title to the joint bank accounts and certificates places her in breach of the antenuptial agreement. They contend that in order to retain these funds defendant must prove that the agreement is invalid. We disagree with this contention.

■ The antenuptial agreement reads in pertinent part:

It is the intention of the parties hereto that each shall have the right to make such disposition by a transfer, gift, will or otherwise as each may see fit, of any

property owned at the time of the marriage or thereafter acquired, and in case of the death of either party, the surviving spouse hereby waives and forever quit claims any and every right and claim of every kind including claims for dower, distributive share, allowance for support, and any and all claims of every nature whatsoever, ... and each party will have complete control and right to make disposition of his individual property as fully and completely as though this marriage had not taken place.

The agreement guarantees to each spouse the right to dispose of his or her property free from any claim of or interference by the other spouse. It does not purport to prevent transfers between spouses so long as they are made voluntarily. Decedent had the right to make any transfer of his property which he desired. By transferring monies into joint tenancy with his wife, he exercised this right consistently with the provisions of the antenuptial agreement. It may not be entirely logical for a man to enter into a contract to keep his property separate from his wife's and then transfer it into joint tenancy with her, but that does not constitute a legal basis on which this court could void a transfer freely made.

■ Furthermore, defendant's receipt of the jointly held property did not constitute a breach of the antenuptial agreement on her part. She has made no claim against the estate for dower, support or any part of decedent's estate as it existed at his death. She has merely asserted her right to property transferred by decedent to her prior to his death. Defendant is no more obligated by the agreement to renounce her interest in these certificates than she would be to return to the plaintiff birthday and Christmas presents given her by the decedent which were purchased with his separate funds.

■ The controlling question in this case is whether the trial court correctly found that valid joint tenancies were created in the certificates and accounts which are the subject of this action. Generally, a conveyance to two or more people is pre-

sumed to create a tenancy in common in the absence of an expression of contrary intent. *In re Estate of Miller,* 248 Iowa 19, 22, 79 N.W.2d 315, 318 (1956). In the case of joint bank accounts, if the signature card contains clear and unequivocal survivorship language, the card is conclusive evidence of the parties' intent to establish a joint tenancy and cannot be changed by extrinsic evidence except in a situation involving fraud, duress or mistake. *In re Estate of Samek,* 213 N.W.2d 690, 692 (Iowa 1973); *Williams v. Williams,* 251 Iowa 260, 264, 100 N.W.2d 185, 188 (1959).

Although the record could be more complete on this point, there is evidence to support the trial court's conclusion that the signature cards clearly indicated an intent to create joint tenancies.

■ Moreover, plaintiffs do not contest that there was an attempt to create joint tenancies, but rather contend that the transfer was ineffective due to decedent's failure to deliver any tangible evidence of the transfer to defendant. However, manual delivery of a bank book or certificate evidencing a deposit is unnecessary. *Hyland v. Standiford,* 253 Iowa 294, 302, 111 N.W.2d 260, 265 (1961). If the instrument creating the joint tenancy is valid, it is immaterial who holds actual custody of it since the possession of one joint tenant is equivalent to the possession of both. *Id.* Therefore, the trial court was correct in concluding that once the joint tenancy was created delivery was complete.

■ Plaintiffs further maintain that defendant is not entitled to these funds because she was in a confidential relationship with the decedent. The effect of such a confidential relationship is to raise a presumption of fraud and undue influence and shift the burden to the survivor to establish by clear and convincing evidence that the transfer was made voluntarily. *In re Estate of Samek,* 213 N.W.2d at 692; *Luse v. Grenko,* 251 Iowa 211, 214, 100 N.W.2d 170, 172 (1959). A confidential relationship arises "when one person has gained the confidence of another and purports to act or

advise with the other's interest in mind." *Oehler v. Hoffman,* 253 Iowa 631, 635, 113 N.W.2d 254, 256 (1962). It does not exist solely from blood relationship or marriage. *Oehler,* at 635, 113 N.W.2d at 256; *Wilcox v. Hamborg,* 242 Iowa 471, 475, 46 N.W.2d 530, 532 (1951).

In the present case there is no evidence in the record to indicate a confidential relationship between the defendant and the decedent. It does not appear that the decedent was incapacitated in any respect or that defendant undertook to manage his affairs. Quite to the contrary the record shows that decedent actively undertook the management of his own affairs and defendant acquiesced in his wishes.

In addition, plaintiffs argue that even if valid joint tenancies were created in the certificates, they were severed when decedent pledged one of the certificates as security for a note executed solely by him. The supreme court held in *Hyland v. Standiford,* 253 Iowa at 303, 111 N.W.2d at 266, that since an encumbrance is regarded as a lien on the property and not as an absolute conveyance, a pledge of stock as security for a loan without further alienation did not sever the joint tenancy in the stock. While in *Hyland* all the joint tenants joined in the encumbrance, recent cases from other jurisdictions reach the same result when only one joint tenant pledges the property. *Estate of Gebert,* 95 Cal.App.3d 370, 376, 157 Cal.Rptr. 46, 49 (1979) (dictum); *Ogilvie v. Idaho Bank & Trust Co.,* 99 Idaho 361, 582 P.2d 215, 221 (1978); *American National Bank & Trust Co. of Shawnee v. McGinnis,* 571 P.2d 1198, 1200 (Okl.1977).

Plaintiffs' final point is that defendant made inconsistent statements regarding her entitlement to the property and her intention to keep it. Based on the record before us, we are unable to assign any legal significance to these unspecified statements.

Therefore, having considered all of plaintiffs' arguments, and finding them unmeritorious, the decision of the trial court is affirmed in all respects.

AFFIRMED.