# IN THE COURT OF APPEALS OF IOWA

No. 20-1279
Filed October 6, 2021

IN THE MATTER OF THE ESTATE
OF KEITH DALE SASSEEN, Deceased.

MICHELLE ALM
and D'AN SASSEEN,
        Objectors-Appellants,

vs.

BARBARA SASSEEN,
        Executor-Appellee.
_____

        Appeal from the Iowa District Court for Wapello County, Myron L. Gookin,

Judge.


        Michelle Alm and D'An Sasseen, beneficiaries of the Estate of Keith

Sasseen, appeal the order overruling their objections to the inventory and final

report of its executor, Barbara Sasseen. **AFFIRMED.**


        Kyle A. Sounhein and Noah L. Schmall of Lynch Dallas, P.C., Cedar Rapids,

for appellants.

        Richard J. Gaumer of Gaumer, Emanuel, Carpenter & Goldsmith, P.C., and

Michael J. Moreland of Harrison, Moreland, Webber & Simplot, Ottumwa, for

appellee.


        Heard by Bower, C.J., and Greer and Badding, JJ.

**BADDING, Judge.**

Michelle Alm and D'An Sasseen, beneficiaries of the Estate of Keith Sasseen, appeal the order overruling their objections to the inventory and final report of its executor, Barbara Sasseen. Relying upon a premarital agreement between Keith and Barbara, they contest Barbara's claim of survivorship rights with regard to two joint bank accounts. Because Michelle and D'An failed to show substantial extrinsic evidence to rebut the presumption in favor of finding the accounts are held in joint tenancy with right of survivorship, we affirm.

## I.     *Background Facts and Proceedings*

Before marrying in June 2005, Keith and Barbara executed a premarital agreement. Paragraph 6 of the agreement, titled "Separate Property Interests in Premarital Assets and Acquisitions," provided in relevant part that "all assets belonging to Keith D. Sasseen at the commencement of their contemplated marriage, and any assets acquired by Keith D. Sasseen during that marriage by gift, bequest, devise, or descent, shall be and remain his separate property." The same provision applied to Barbara's premarital assets.

In an attachment to the agreement, Keith disclosed his assets to Barbara, which included "Savings and Checking accounts" at Wells Fargo Bank totaling $35,000.00. Keith also listed his estimated retirement income from IPERS, social security, and investments, although he was not retired at the time of the parties' marriage. Barbara likewise disclosed her assets to Keith in an attachment to the agreement. Among her assets were "[s]tock accounts and investments" totaling $500,000.00. Like Keith, Barbara listed her estimated retirement income from a John Deere pension and investments.

After marrying, Keith and Barbara went to Wells Fargo and signed a document entitled "Consumer Account Application for Relationship Change" for each account. Under "Current Relationship," each application names Keith as "sole owner"; under "New Relationship," each application names Keith as "Prim JntOr" and Barbara as "Sec JntOr." Barbara transferred funds from her checking and saving accounts to the Wells Fargo accounts before closing them. During the marriage, Keith and Barbara each deposited funds, including income from their employment, retirement accounts, and investments, into the Wells Fargo accounts and paid all expenses from them. They did not keep any accounting of the amounts each contributed and spent.

Keith died in December 2018. Barbara was appointed as executor of Keith's estate in accordance with Keith's will. In the initial report and inventory, Barbara listed the Wells Fargo checking and savings accounts as jointly owned property with surviving spouse. The total value of the accounts at the time of Keith's death was over $400,000.00.

Michelle and D'An, Keith's daughters, filed objections to the initial report and inventory and the final report. They claimed that under the terms of the premarital agreement, they are entitled to initial distributions of the $35,000.00 listed in Keith's financial disclosure in the premarital agreement and a $20,910.07 inheritance Keith received; they concede Barbara is entitled to a distribution of $55,000.00 in house proceeds. They asked the court to divide the remaining balance in proportion to the amount they believe Keith and Barbara contributed to the accounts during the marriage, with Barbara receiving 46% while they receive the 54% attributable to Keith.

Following trial, the district court overruled and denied Michelle and D'An's objections and approved Barbara's final report. The court found the Wells Fargo accounts were held in joint tenancy with the right of survivorship. It also found the premarital agreement did not override Barbara's survivorship rights.

## II.  Scope and Standards of Review

Our review is de novo.  *See Est. of Randeris v. Randeris*, 523 N.W.2d 600, 604 (Iowa Ct. App. 1994) (stating review of rulings on objections to an executor's final report is de novo); *see also In re Est. of Serovy*, 711 N.W.2d 290, 295 (Iowa 2006) (engaging in de novo review of the district court's interpretation of a contract in equitable proceedings).  We give weight to the trial court's findings but are not bound by them.  *See In re Est. of Williams*, 515 N.W.2d 552, 553 (Iowa Ct. App. 1994).

## III.  Analysis

Michelle and D'An claim the district court erred in (1) determining they failed in their burden to establish that Keith did not intend to create a right of survivorship when he added Barbara's name to the Wells Fargo bank accounts and (2) concluding the premarital agreement did not override the survivorship aspect of the joint bank accounts.

We begin our analysis of the first issue with the basic proposition that bank accounts held in joint tenancy are not part of an estate and are not devisable by will. *See In re Est. of Kiel*, 357 N.W.2d 628, 631 (Iowa 1984); *In re Est. of Roehlke*, 231 N.W.2d 26, 28 (Iowa 1975).  This is due to the nature of joint tenancy property, which has been described by our supreme court as "property held by two or more parties jointly, with equal rights to share in the enjoyment of the whole property

during their lives, and a right of survivorship which allows the surviving party to enjoy the entire estate." *In re Est. of Kirk*, 591 N.W.2d 630, 634 (Iowa 1999).

A bank account is held in joint tenancy when it is in two names and expressly made payable to either or to the survivor. *See Roehlke*, 231 N.W.2d at 28; *accord In re Est. of Lamb*, 584 N.W.2d 719, 724 (Iowa Ct. App. 1998). The question is whether the person establishing the account intended to create a joint tenancy. *See Lamb*, 584 N.W.2d at 724. Extrinsic evidence may be admissible to determine intent. *See Petersen v. Carstensen*, 249 N.W.2d 622, 625 (Iowa 1977).

> The resulting rule[1] is that a bank deposit in the name of alternate payees becomes the property of the surviving payee upon the depositor's death in the absence of extrinsic evidence showing that the depositor had a contrary intention. When substantial extrinsic evidence is offered in an effort to establish a contrary intention, an issue of fact is generated. However, when the evidence offered to show a contrary intention is not substantial, a joint tenancy exists as a matter of law.

*Id.*

Michelle and D'An do not really contest the joint tenancy nature of the bank accounts. Instead, the question before us focuses on whether Michelle and D'An offered substantial evidence showing that Keith intended no right of survivorship when he added Barbara's name to the Wells Fargo accounts. They argue they overcame the survivorship presumption with the following evidence: (1) the

---

[1] This rule stems from the *Petersen* court's interpretation of Iowa Code section 524.806 (2018), which provides in pertinent part:

> When a deposit is made in any state bank in the names of two or more individuals, payable to any one or more of them, or payable to the survivor or survivors, the deposit, including interest, or any part thereof, may be paid to any one or more of the individuals whether the others be living or not.

*See generally Petersen*, 249 N.W.2d at 625 (citing an earlier version of section 524.806).

relationship change documents, which do not contain any reference to a right of survivorship; (2) Michelle's testimony that Keith intended half of the bank accounts to go to her and D'An; and (3) the language of the premarital agreement.

Michelle and D'An's first argument begs the question. Under the rule set forth in *Petersen*, it is not necessary that bank documents specifically reference a right of survivorship. 249 N.W.2d at 625. Instead, a rebuttal presumption in favor of survivorship rights is created when a deposit is made in the names of two individuals, payable to either. *Id.* That is exactly what the relationship change documents did here by designating Keith as "Prim JntOr" and Barbara as "Sec JntOr." A long-time employee at Wells Fargo testified those designations had the effect of changing Keith's accounts to "a joint account, so it's like a primary joint secondary, joint/or account." She explained a "joint/or" account means the account is "either/or. Somebody passes away, then it would go to the second person on the account." *See Williams*, 515 N.W.2d at 554 (relying in part on testimony from a bank employee in finding that the presumption of survivorship in a jointly payable certificate of deposit was not rebutted).

As for Michelle's understanding of Keith's intent, we agree with the district court that her testimony alone is not substantial evidence of a contrary intent. Michelle testified as follows:

> Q. When was the first time you learned about the premarital agreement? A. Prior to their marriage, my dad had a conversation that because it was a third marriage for both of them, third marriage for Barb, third marriage for him, late in life marriage coming in with separate assets, out of respect to Barb's family and out of respect for my sister and I, it was very important to him that we all knew a prenuptial agreement was going to be made so that there would be no concerns that assets from either of them would be going to the opposite family, and that was respecting . . . both families, and he

informed me that prior to the marriage, there would be a prenuptial agreement in place so that—it was supposed to have been followed.
. . . .
Q. . . . Did your father ever explain what he thought the premarital agreement did for the division of the [bank] accounts?
. . . .
A. It was my understanding that he thought everything was in place and the whole purpose was to avoid this and that it was, as I said, from what he explained, half was to go to Barb, half was to be split between my sister and I.
Q. Do you believe that intent is reflected in the premarital agreement?  A. Yes, I do.

Michelle admitted that she did not participate in the preparation of the premarital agreement.  And her understanding of the agreement is at odds with Barbara, who was a participant in its preparation.  At trial, Barbara explained the plan that she and Keith had when they entered into the premarital agreement "was that what Keith brought to the marriage was going to go to his kids, and what [she] brought to the marriage was going to go to [her] kids . . . and everything else that [they] accumulated afterwards would be shared."

Michelle and D'An finally rely on the premarital agreement itself, which they argue shows Keith intended no right of survivorship in the accounts and, relatedly, overrides any survivorship rights that may have been created by adding Barbara's name.  They cite paragraph 15 of the agreement, entitled "Discharge of Living Expenses," in which Keith and Barbara agreed to establish a joint account to pay expenses during the marriage.  It states:

> The joint living expenses of the parties may be paid from a joint account to be established following the marriage into which each of the parties may contribute. . . .  If any such income so deposited in the joint account is from a separate property interest, . . . the commingling of said funds shall not be construed to grant the other party any right, title or interest in and to said separate property not heretofore granted to them.

Michelle and D'An argue that Keith added Barbara's name to his Wells Fargo accounts to establish the joint account for use during the marriage pursuant to paragraph 15 but that he intended all of their individual deposits into the account to remain separate. This interpretation contravenes the language of the provision and the agreement as a whole.

Paragraph 15 states that if "income . . . from a *separate* property interest" is added to the joint account, it does not change the character of that property interest. (Emphasis added.) It does not say that all income deposited into the joint account remains the separate property of the depositor, as Michelle and D'An seem to contend. The terms of paragraph 15 are in keeping with paragraph 6, "Separate Property Interests in Premarital Assets and Acquisitions," which states that any assets held by the parties at the commencement of the marriage and any acquired during the marriage "by gift, bequest, devise, or descent"—or any increase or appreciation of that property or purchase of assets with money derived from it—would remain separate.

In contrast, paragraph 7, "Property Interests in Postmarital Assets and Acquisitions," states:

> The parties agree that all assets acquired during the marital relationship except those described as separate property above [in paragraph 6] shall be considered to be acquired as a result of the joint effort of the parties and shall be property subject to apportionment to the parties by an appropriate court of dissolution in the event that dissolution of marriage of the parties is sought by either party . . . .

While some of the deposits into the joint accounts were from the parties' premarital retirement accounts and investments, paragraph 13, "Interest in

Preexisting Retirement and Employee Benefit Packages," specifically provides that

> [a]ny preexisting retirement or employee benefit plan held and existent by one party prior to the marriage shall be the separate property o[f] that party to the extent of the value of said interest as of the date of marriage. *Any rents, issues, profits, increases, appreciation or income from said retirement or employee benefit plans may be deemed marital property* and subject to division by a court of dissolution. It is anticipated that upon retirement, *the retirement income of the parties shall be used by the parties as they shall decide.* If any investments of funds from family income are made, *then such amounts shall be divided as the parties shall decide.*

(Emphasis added.) Further, paragraph 14, "Property Transfers Between Parties," allowed the parties to transfer property to one another, specifically stating: "Neither party intends by this agreement to limit or restrict in any way the right to receive any such transfer, conveyance, devise or bequest from the other after the parties' marriage." *See Coffman v. Adkins*, 338 N.W.2d 540, 542 (Iowa Ct. App. 1983) (interpreting a similar provision in a premarital agreement as allowing the decedent's transfer of certificates of deposit and bank accounts into joint tenancy with a right of survivorship). This paragraph gave the parties the right to make any transfer of their property they desired. *Id.* at 543 ("By transferring monies into joint tenancy with his wife, [decedent] exercised this right consistently with the provisions of the antenuptial agreement.").

These provisions are consistent with Barbara's understanding of the premarital agreement—that anything acquired before the marriage would remain separate property (regardless of its commingling with other assets) and any assets acquired during the marriage would be shared equitably. The parties' use of the joint accounts is also consistent with the premarital agreement as a whole. At oral

argument, Barbara contended that paragraph 15 was meant to allow the parties to make deposits from their premarital retirement accounts and investments into a joint account without converting those assets into marital property. That is exactly what the parties did during the marriage. Barbara testified that each year, she and Keith would withdraw a certain amount from their investment accounts and make a deposit into their joint accounts, which they would then use throughout the year. At Keith's death, those investment accounts went to his daughters.[2] Accepting Michelle and D'An's interpretation of the premarital agreement would require us to find that all of the income the parties earned during their marriage remained their separate property. That is not what the agreement says or what the parties intended.

Michelle and D'An failed to provide substantial extrinsic evidence to show Keith intended no right of survivorship with regard to the Wells Fargo accounts. Rather, the premarital agreement reflects Barbara's understanding that the parties would share in the proceeds of their joint efforts during their marriage while keeping the assets accumulated before their marriage separate and preserved for their families. Nothing in the agreement "overrides" the right of survivorship in the joint bank accounts. *See Peet v. Monger*, 56 N.W.2d 589, 596 (Iowa 1953) (finding a joint tenancy deed with right of survivorship "could stand together" with a premarital

---

[2] In line with this understanding, Barbara testified at trial that she was not making any claim to the $35,000.00 that was in Keith's Wells Fargo account before the marriage or to a $20,910.07 inheritance Keith received during the marriage, both of which were deposited into the joint accounts. Although the district court did not give effect to this agreement in its ruling, Michelle and D'An have not raised that as an issue on appeal.

agreement, which gave the wife the "right to lessen some of her rights under the contract and to keep other rights in full force").

Because the accounts are in joint tenancy with the right of survivorship, they pass to Barbara and are not part of the estate. We therefore affirm the ruling overruling and denying the objections to the inventory and final report.

**AFFIRMED.**