In the Matter of the ESTATE OF Ruby I. KIRK, Deceased, and In the Matter of the Estate of Gerdon H. Kirk, Deceased, Health Management Systems, Inc., Appellant.

No. 97–1181.

Supreme Court of Iowa.

March 24, 1999.

Patricia M. Hulting of Roehrick, Hulting, Blumberg, Kirlin & Krull, P.C., Des Moines, for appellant.

Jerrold B. Oliver of Jordan, Oliver & Walters, P.C., Winterset, for appellee Estate of Ruby I. Kirk.

Considered by McGIVERIN, C.J., and HARRIS, CARTER, NEUMAN, and CADY, JJ.

CADY, Justice.

Claimant appeals in this consolidated estate action from a ruling by the district court finding a disclaimer filed by the executor of the Ruby Kirk estate validly disclaimed the testate succession of estate property and joint tenancy property from the Gerdon Kirk estate. We affirm in part and reverse in part.

## I. Background Facts & Proceedings.

Ruby Kirk died February 23, 1996. She was eighty-one-years-old. Her husband, Gerdon Kirk, died three months earlier. He was seventy-seven-years-old. The couple had lived in a home near Lorimor, Iowa, until July 1993, when health problems forced Ruby into a nursing home. Ruby moved into a nursing home in Lorimor and Gerdon remained in the marital home. Ruby qualified for Title XIX Medicaid benefits to assist in the expenses of her nursing home care.

Gerdon left a will which devised all his property to Ruby. He owned real and personal property valued at approximately $30,000, as well as property held in joint tenancy with Ruby. The joint tenancy property was valued around $26,000, with the bulk of the property consisting of three certificates of deposit.

Ruby also died testate. The beneficiaries under the will were the Kirk's three daughters. A grandson, Jerry Decker, was the named executor.

On June 27, 1996, Decker filed a disclaimer of all real and personal property passing from Gerdon's estate. The disclaimer also included the property held in joint tenancy. The only other asset in Ruby's estate was a checking account valued at $1016.

On August 8, 1996, Health Management Services (HMS) filed a timely claim in Ruby's estate for $41,612.34. HMS was an agent for the Iowa Department of Human Services. It sought to recover the Medicaid benefits paid to Ruby. HMS subsequently filed a similar claim in Gerdon's estate to recover the cost of Ruby's care.

Decker filed an application with the district court to determine the validity of the waiver. The district court found Decker validly disclaimed the transfer of property from Gerdon's estate. It also determined all property of Gerdon's estate passed to the Kirk's children free from the claim by HMS.

On appeal HMS claims the district court erred in finding the disclaimer filed in Ruby's estate to be valid. It claims the disclaimer is against public policy. It also argues Ruby cannot disclaim her proportional interest in joint tenancy property. HMS did not appeal the ruling by the district court finding Gerdon's estate was not responsible for the Medicaid assistance and services provided to Ruby.

## II. Standard of Review.

Review of matters tried in probate is ordinarily de novo, except for actions to set

aside wills, for the involuntary appointment of guardians and conservators, and to establish contested claims. *See In re Estate of Todd,* 585 N.W.2d 273, 275 (Iowa 1998); Iowa Code § 633.33 (1997). Thus, our review of an executor's application to determine the validity of a disclaimer is de novo.

### III. Validity of Disclaimer.

### A. Public Policy.

A transferee in a testate or intestate estate is permitted to disclaim or renounce the transfer of property. Iowa Code § 633.704(1) (1995). The right to disclaim is also given to a surviving joint tenant. *Id.* Generally, the disclaimer must be filed within nine months after the date of the decedent's death. *Id.* § 633.704(2)(a); *In re Estate of Lamoureux,* 412 N.W.2d 628, 633 (Iowa 1987). However, if the person eligible to disclaim dies within the time allowed for disclaimer, the decedent's personal representative may disclaim within the remaining time the decedent would have had to disclaim. Iowa Code § 633.704(3)(c).

In this case, HMS does not challenge the statutory procedures for disclaimer. Instead, it asserts the disclaimer should be declared to be against public policy when done to avoid the payment of a Medicaid claim in an estate.

Medicaid is a cooperative federal-state program designed to provide federal financial assistance to states that choose to reimburse certain costs of medical treatment for needy persons. *See Clark by Clark v. Iowa Dep't of Human Servs.,* 513 N.W.2d 710, 710–11 (Iowa 1994). It is the primary source of public assistance for the elderly who reside in nursing homes. *Id.* States that participate in the program are required to develop plans that comply with the federal Medicaid statutes, regulations, and rules. *Id.* Iowa participates in the program, and has enacted a comprehensive statutory scheme in response to the federal mandates. *See* Iowa Code ch. 249A.

Chapter 249A includes provisions for the recovery of improper Medicaid payments from the recipient or the estate of the recipient. *See generally id.* § 249A.5. Under these statutes, Medicaid payments that have been incorrectly paid to a recipient are considered a debt due to the state and are recoverable upon the recipient's death as a claim against the estate. *Id.* § 249A.5(1). Additionally, the provision for Medicaid assistance to an individual creates, under certain circumstances, a debt due to the Department of Human Services from the individual's estate. *Id.* § 249A.5(2). For the purposes of collection of this debt, the estate of the Medicaid recipient includes property the recipient had an interest in at the time of the recipient's death, including interests in joint tenancy property. *Id.* § 249A.5(2)(c).

HMS claims these statutes establish a strong public policy for the collection of Medicaid payments from estates, and renders a disclaimer exercised by Medicaid recipients ineffective against claims for Medicaid recovery. It also argues this claim is bolstered when the disclaimer involves nonexempt assets, which in this case would have rendered Ruby ineligible for continued Medicaid assistance if the property had passed to her from Gerdon's estate.

We acknowledge the recovery of Medicaid assistance paid to a recipient includes the ability to file claims in estate proceedings. On the other hand, our disclaimer provisions are permitted to be exercised by an executor and do not include restrictions involving claims for Medicaid payments. *See* Iowa Code § 633.704. Ordinarily, unless two statutes directly conflict, we attempt to harmonize them in an effort to carry out the meaning and purpose of both. *Coleman v. Iowa Dist. Ct.,* 446 N.W.2d 806, 807 (Iowa 1989); *Dillon v. City of Davenport,* 366 N.W.2d 918, 922 (Iowa 1985).

Clearly, the disclaimer statute does not directly conflict with the recovery provisions of the medical assistance statutes. The disclaimer provisions can, however, be utilized to frustrate the collection of Medicaid claims. Yet, we have repeatedly acknowledged beneficiaries may renounce property intended for their benefit even if the renunciation may effectively defeat claims of creditors. *See Coomes v. Finegan,* 233 Iowa 448,

451, 7 N.W.2d 729, 730 (1943); *Voit v. Schultz*, 232 Iowa 55, 56–57, 4 N.W.2d 410, 411 (1942); *see also* Stephen E. Parker, *Can Debtors Disclaim Inheritances to the Detriment of Their Creditors?*, 25 Loyola U. Chi. L.J. 31, 31–32 (1993); Sara L. Johnson, Annotation, *Creditor's Right to Prevent Debtor's Renunciation of Benefit Under Will of Debtor's Election to Take Under Will*, 39 A.L.R.4th 633, 636 (1985). We have even freely acknowledged the usual effect of the disclaimer statute is to avoid the imposition of transfer taxes and to thwart creditors. *See Lamoureux*, 412 N.W.2d at 630. Although our legislature gave Medicaid claims a priority status as against other creditors, it has not indicated such claims should avoid the same disclaimer consequences as other creditors.

We recognize the importance of prohibiting financial restructuring designed to qualify an individual for Medicaid. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460, 469 (1981) (upheld the right of a state to deem one spouse's income as available to the other for purposes of determining Medicaid eligibility); *Clark by Clark*, 513 N.W.2d at 711 (income for Medicaid eligibility purposes determined as of its receipt, not after reduction by payments under spousal support order, thus disallowing attempt to reduce husband's income via spousal support order to qualify him for Medicaid eligibility); *Ford v. Iowa Dep't of Human Servs.*, 500 N.W.2d 26, 32 (Iowa 1993) (annuity calculation was reasonable interpretation of Medicaid rules); *Torner by Torner v. State*, 399 N.W.2d 381, 384 (Iowa 1987) (diversion rule governing the computation of Medicaid recipient's income which allowed diversion of institutionalized spouse's funds to noninstitutionalized spouse permitted only if noninstitutionalized spouse did not have income to meet SSI standard upheld); *In re Marriage of Cerven*, 335 N.W.2d 143, 146 (Iowa 1983) (where wife was in nursing home, transfer of assets to son in order to shield husband from support obligations was a sham); *In re Benson*, 495 N.W.2d 777, 782

(Iowa App.1992) (in the context of determining child support in dissolution proceedings, support is not structured so as to make families eligible for supplemental security income). Yet, the disclaimer of property does not amount to an assignment or conveyance of property. *Coomes*, 233 Iowa at 453, 7 N.W.2d at 730–31. Instead, it is merely viewed as a refusal to accept property from another, and is treated as if no transfer occurred. *Id.;* Iowa Code § 633.704(3)(a). Thus, a disclaimer cannot be viewed as a scheme to circumvent the Medicaid eligibility provisions.

We reject the argument by HMS that the disclaimer is contrary to public policy because it thwarts its efforts to recover its claim from Ruby's estate.[1]

**B. Jointly Held Property.**

HMS claims the trial court erred by finding the executor could disclaim Ruby's proportional interest in the joint tenancy property. It maintains her executor could only disclaim what Ruby inherited, not the portion of the joint tenancy property she already owned.

Joint tenancy property is property held by two or more parties jointly, with equal rights to share in the enjoyment of the whole property during their lives, and a right of survivorship which allows the surviving party to enjoy the entire estate. *Lamoureux*, 412 N.W.2d at 631; *see also* 20 Am. Jur.2d *Cotenancy & Joint Ownership* § 3 (1995). We have previously identified two types of interests in joint tenancy. *Lamoureux*, 412 N.W.2d at 631 (citing D.L. Uchtmann & P.K. Zigterman, *Disclaimers of Joint Tenancy Interests Revisited*, 18 Creighton L.Rev. 333, 342 (1985)). The proportional interest is the joint tenant's interest which comes from the creation of the joint tenancy which necessarily occurs before the death of another joint tenant. *Id.* The accretive interest, on the other hand, is the interest the survivor receives at the death of a joint tenant. *Id.* Thus, where two joint

1. HMS only challenges the public policy behind the disclaimer statute as it relates to Medicaid claims. It does not raise a claim that Ruby fraudulently obtained Medicaid benefits. *See* Sara L. Johnson, Annotation, *Creditor's Rights to Prevent Debtor's Renunciation of Benefit Under Will or Debtor's Election ot Take Under Will*, 39 A.L.R.4th 633, 636 (1985).

tenants have an interest in property and one joint tenant dies, the surviving joint tenant has a one-half proportional interest and a one-half accretive interest. *See Horner v. Iowa State Tax Comm'n*, 234 Iowa 624, 626–27, 12 N.W.2d 166, 167 (1943) (recognizing succession of rights to a joint tenant is separate from original creation of joint tenancy).

Iowa Code section 633.704(1) clearly permits disclaimer of an interest held in joint tenancy. It fails to clarify, however, whether the disclaimer applies to the entire joint tenancy interest (proportional and accretive interest) or simply the accretive interest.

 Based upon the recognized distinctions in the property interests held by joint tenants, we agree the disclaimer of joint tenancy property is limited to the accretive interest rather than the proportional and accretive interest. *See* 1 Sheldon F. Kurtz, *Kurtz on Estates* § 15.33 (3d ed.1995) [hereinafter Kurtz]. In this case, Ruby acquired her proportional interest in the property at the time the tenancy was created. This occurred prior to Gerdon's death. Thus, the only interest available for Ruby to disclaim was the accretive interest which passed to her upon Gerdon's death. Disclaimer only applies to property which passes upon death to the disclaimant, not to property owned by the disclaimant prior to the death.

 This approach is not only consistent with our recognized distinction in the interests of joint tenancy property, but is also compatible with the legislative treatment of joint tenancy property for inheritance tax purposes. *See Lamoureux*, 412 N.W.2d at 632 (disclaimer statute should be construed in light of the inheritance tax statute). Under our inheritance tax statute, only a surviving joint tenant's accretive interest is taxable. *See* Iowa Code § 450.3(5); Kurtz § 23.10. This is because the proportional interest belonged to the surviving joint tenant prior to the death of the other joint tenant. Accordingly, we reverse the district court on this issue and find the disclaimer of joint tenancy property in this case is limited to Ruby's accretive interest.

**AFFIRMED IN PART, REVERSED IN PART.**