APPEL, Justice (dissenting).
I. Introduction.
I respectfully dissent. In my view, the majority errs in its resolution of Cheryl Albaugh's claim under the Iowa Uniform Residential Landlord and Tenant Act, Iowa Code chapter 562A (IURLTA).
Iowa Code chapter 523D (retirement facilities statute) and the IURLTA address, at least in part, the same subject matter. This is a common occurrence in Iowa law. The legislature, as well as our own caselaw, direct that when statutes govern the same subject matter, we should strive to reconcile potential conflicts through harmonizing the statutes. Iowa Code § 4.7 (2016); In re Estate of Kirk , 591 N.W.2d 630, 633 (Iowa 1999).
The harmonizing of statutes "constrain[s] judicial discretion in the interpretation of laws." Astoria Fed. Sav. & Loan Ass'n v. Solimino , 501 U.S. 104, 109, 111 S. Ct. 2166, 2170, 115 L.Ed.2d 96 (1991). We do not interpret statutes to generate conflict. With a firm hand and a determined eye, we deliberately and conscientiously seek to avoid conflict in such situations.
Further, aside from our efforts to avoid the shoals of conflict, we do not find that statutes conflict unless they meet the extraordinary standard of "positive repugnancy." State v. Perry , 440 N.W.2d 389, 391 (Iowa 1989) (quoting United States v. Batchelder , 442 U.S. 114, 122, 99 S. Ct. 2198, 2203, 60 L.Ed.2d 755 (1979) ). Not simply overlapping, or related, or dealing with the same subject matter. They must be positively (not by implication or construction) repugnant (completely conflicting).
But the statutes here are easily harmonized through a modest effort at reconciliation. Simply put, a facility can impose an entrance fee under Iowa Code section 523D.1(4) as long as that entrance fee is not used as an illegal rental deposit under Iowa Code section 562A.6(12) and .12(1). The majority through an expansive interpretation concludes that the retirement facilities statute allows an entrance fee in an amount and with a purpose that would be prohibited by the IURLTA. This approach is hardly avoiding the shoals of conflict. Are the statutes positively repugnant after our best efforts to reconcile them through statutory interpretation designed to further the ends of both statutes? No. Under *689 the statutes, a retirement facility can charge an entrance of any amount over $5000 so long as the purpose is not to secure performance of the rental agreement.
The legislature is presumed to know the contents of prior law. Mulhern v. Catholic Health Initiatives , 799 N.W.2d 104, 118-19 (Iowa 2011). Thus, the legislature was presumably aware of the provisions of the IURLTA. Yet it chose not to expressly override the IURLTA. There is no positive repugnancy.
But there is more. Even if the statutes were irreconcilable and positively repugnant notwithstanding a conscientious effort to interpret them in harmony, the broadly worded savings clause in Iowa Code section 523D.7(5) provides a legislative directive that liabilities under "any other statute" remain in effect as if the retirement facilities statute "were not in effect." The legislature has thus expressly stated what happens if the provisions of the retirement facilities statute are found, after determined harmonization efforts, to be irreconcilable with another statute. In cases of irreconcilable conflict, the legislature has declared that liabilities in other sections of the Code survive, period.
Rather than apply the savings clause in a straightforward manner, the majority twists the statute by inferring exclusivity in the definition of an entrance fee. On what basis? There is no provision of exclusivity in the statute, and as recognized by the majority, the retirement facilities statute does not preempt the IURLTA. Well, the majority points out, the IURLTA would otherwise limit the scope of allowable entrance fees. But that does not imply exclusivity. Does the retirement facilities statute also trump the statutory prohibitions on discrimination in rental agreements, since antidiscrimination provisions would otherwise limit the scope of allowable entrance fees? Of course not. Taken to its logical conclusion, the majority's rationale suggests that any statutory prohibition potentially conflicting with the retirement facilities statute must be obliterated. Of course, that comes at the expense of the legislative directions to harmonize statutes and to choose statutory liability under other statutes where harmonization is not possible.
We have repeatedly declared, with blaring legal bugles, that it is not our province to rewrite statutes. See State v. Doe , 927 N.W.2d 656, 665 (Iowa 2019) ("We cannot rewrite the statute ...."); State v. Walden , 870 N.W.2d 842, 843 (Iowa 2015) ("We decline the State's invitation to apply the absurd-results doctrine to effectively rewrite the statute."); In re A.M. , 856 N.W.2d 365, 378 (Iowa 2014) ("We are not free to rewrite a statute in the guise of interpretation."). If the principle so proudly proclaimed in these cases has any real meaning, it must be applied consistently to the unambiguous savings clause in Iowa Code section 523D.7(5). Likewise, we are not at liberty to choose which statutory provisions apply absent irreconcilability. We must honor legislative choices, not rewrite them.
In the end, the majority inexorably bulldozes to its result by declining to interpret the statutes to avoid conflict and by remodeling the statutory savings clause. What gives? The result today chooses a disclosure approach over the substantive regulation of security deposits in the IURLTA. But in doing so, the majority avoids our caselaw and the choices actually made by the legislature through a novel mechanism of judicial override that departs from our traditional approach.
II. Discussion.
A. The Statutes Are Easily Harmonized.
1. Potentially conflicting statutes are harmonized unless irreconcilable . The legislature *690 has instructed us to harmonize potentially conflicting statutes. "If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both." Id. § 4.7; accord In re Estate of Kirk , 591 N.W.2d at 633. We have said, "If a court can reasonably harmonize two statutes dealing with the same subject, it must give concurrent effect to both, even though one is specific, or special, and the other general." State v. Lutgen , 606 N.W.2d 312, 314 (Iowa 2000) (quoting 82 C.J.S. Statutes § 355, at 474-75 (1999) ). "[R]elated statutes ... should be construed together as though they constituted one law, that is, they must be construed as one system." State v. Peters , 525 N.W.2d 854, 857 (Iowa 1994) (quoting 82 C.J.S. Statutes § 366, at 801-08 (1953) ). If two statutory provisions can be harmonized, it is unnecessary to consider which provision is more specific. Citizens' Aide/Ombudsman v. Miller , 543 N.W.2d 899, 903-04 (Iowa 1996).
The demanding standards are a result of the presumption that the legislature is aware of existing law when it enacts new statutes. See Mulhern , 799 N.W.2d at 118-19 ; Slager v. HWA Corp. , 435 N.W.2d 349, 353-54 (Iowa 1989) (en banc). The lack of positive repugnancy thus indicates a legislative intent to harmonize the statutes.
Harmonizing two apparently conflicting statutes "constrain[s] judicial discretion in the interpretation of the laws." Astoria Fed. Sav. & Loan Ass'n , 501 U.S. at 109, 111 S. Ct. at 2170 ; see Good v. Crouch , 397 N.W.2d 757, 760 (Iowa 1986) ("A finding of implied repeal in the absence of such a clear showing of legislative intent 'would constitute a usurpation of legislative authority.' " (quoting State v. Rauhauser , 272 N.W.2d 432, 435 (Iowa 1978) ). We do not interpret statutes to generate conflicts; we assiduously interpret statutes to avoid conflict.
It is only when the very high bar of irreconcilability is met that a specific statutory provision will prevail over a general provision. To demonstrate irreconcilability, "[i]t is not enough to show that the two statutes produce differing results when applied to the same factual situation. The legislative intent to repeal must be manifest in the 'positive repugnancy between the provisions.' " Perry , 440 N.W.2d at 391 (quoting Batchelder , 442 U.S. at 122, 99 S. Ct. at 2203 ); see Freeman v. Grain Processing Corp. , 848 N.W.2d 58, 88 (Iowa 2014) (explaining that an implied repeal occurs "only where the statutes 'cover the same subject matter,' are 'irreconcilably repugnant,' and implied repeal is 'absolutely necessary' " (quoting Rauhauser , 272 N.W.2d at 434 )).
This "demanding" standard exists because "[t]he legislature is presumed to know the existing state of the law when the new statute is enacted," and "[i]n the absence of any express repeal, the new provision is presumed to accord with the legislative policy embodied in prior statutes." Freeman , 848 N.W.2d at 88. We have found that statutory provisions may be reconciled when they require different statutory elements to show a violation or when one provision supplements another. Peters , 525 N.W.2d at 858. We have also found that statutory provisions may be reconciled where "the wording of the statutes does not suggest they may not coexist" and "the provisions of the more specific one are not included in the general one." Lutgen , 606 N.W.2d at 314.
2. The retirement facilities statute and the IURLTA can be easily harmonized. The retirement facilities statute "applies to a provider who executes a contract to provide continuing care or senior adult congregate living services in a facility ... if the contract requires or permits the payment of an entrance fee to a person."
*691 Iowa Code § 523D.2. " 'Continuing care' means housing together with supportive services, nursing services, medical services, or other health related services, furnished to a resident ... in consideration of an entrance fee." Id. § 523D.1(2). Similarly, " '[s]enior adult congregate living services' means housing and one or more supportive services furnished to a resident ... in consideration of an entrance fee." Id. § 523D.1(11). An entrance fee is a transfer of money or property "made as full or partial consideration for acceptance of a specified individual in a facility if the amount exceeds either ... [f]ive thousand dollars [or] [t]he sum of the regular periodic charges for six months of residency." Id. § 523D.1(4).
The IURLTA allows certain rental deposits and prohibits others. A rental deposit is "a deposit of money to secure performance of a residential rental agreement, other than a deposit which is exclusively in advance payment of rent." Id. § 562A.6(12). But a rental deposit cannot be "an amount or value in excess of two months' rent." Id. § 562A.12(1).
Is there an irreconcilable conflict here? No. The fact that the retirement facilities statute allows entrance fees for housing and acceptance into the facility does not create "positive repugnancy between the provisions" in the retirement facilities statute and the IURLTA. Perry , 440 N.W.2d at 391 (quoting Batchelder , 442 U.S. at 122, 99 S. Ct. at 2203 ). We are not at liberty to infer from the ambiguous terms "housing" and "acceptance ... in a facility" that the retirement facilities statute permits entrance fees to secure performance of a residential rental agreement, manufacture a conflict with the IURLTA, and unleash "judicial discretion in the interpretation of the laws." Astoria Fed. Sav. & Loan Ass'n , 501 U.S. at 109, 111 S. Ct. at 2170. As the United States Supreme Court recently explained,
When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at "liberty to pick and choose among congressional enactments" and must instead strive "to give effect to both." A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing "a clearly expressed congressional intention" that such a result should follow. The intention must be "clear and manifest." And in approaching a claimed conflict, we come armed with the "stron[g] presum[ption]" that repeals by implication are "disfavored" and that "Congress will specifically address" preexisting law when it wishes to suspend its normal operations in a later statute.
These rules exist for good reasons. Respect for Congress as drafter counsels against too easily finding irreconcilable conflicts in its work. More than that, respect for the separation of powers counsels restraint. Allowing judges to pick and choose between statutes risks transforming them from expounders of what the law is into policymakers choosing what the law should be. Our rules aiming for harmony over conflict in statutory interpretation grow from an appreciation that it's the job of Congress by legislation, not this Court by supposition, both to write the laws and to repeal them.
Epic Sys. Corp. v. Lewis , 584 U.S. ----, ----, 138 S. Ct. 1612, 1624, 200 L.Ed.2d 889 (2018) (alterations in original) (first quoting Morton v. Mancari , 417 U.S. 535, 551, 94 S. Ct. 2474, 2483, 41 L.Ed.2d 290 (1974) ; then quoting Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer , 515 U.S. 528, 533, 115 S. Ct. 2322, 2326, 132 L.Ed.2d 462 (1995) ; then quoting *692 Morton , 417 U.S. at 551, 94 S. Ct. at 2483 ; and then quoting United States v. Fausto , 484 U.S. 439, 452-53, 108 S. Ct. 668, 676, 98 L.Ed.2d 830 (1988) ). We might show the same respect to the Iowa legislature.
At most, the ambiguous nature of "housing" and "acceptance ... in a facility" requires us to harmonize those provisions with the limitations on rental deposits in the IURLTA. See Iowa Code § 4.7. An entrance fee is permitted if it is consideration for acceptance into the facility or for continuing care services, but it is not permitted to secure performance of a residential rental agreement in an amount greater than two months' rent.
Another approach is to carefully observe the limitations of the retirement facilities statute. An entrance fee is defined as a payment for "acceptance of a specified individual in a facility" that exceeds certain amounts. Id. § 523D.1(4) (emphasis added). The words are clear: It is a fee for acceptance into a facility. It gets you in the door. It is a ticket of admission for entrance on day one. But the authorizing of an entrance fee for purposes of "acceptance of a specified individual in a facility" is not contrary to the security deposit provisions of the IURLTA. The authorization of an entry fee "for acceptance" is neither positively repugnant with the IURLTA nor an implied permit to evade the provisions of the IURLTA. If the provisions of the retirement facilities statute preempted other statutes and regulations, entrance fees could be used in discriminatory fashion without violating civil rights law, transportation services could be provided by unlicensed chauffeurs who violate rules of the road, and nursing services could be provided in a fashion contrary to medical practices.
Some concrete examples illustrate the ease with which the provisions are harmonized. An entrance fee can be charged for certain "housing together with supportive services, nursing services, medical services, or other health related services," id. § 523D.1(2), without running afoul of the prohibition in the IURLTA so long as the fee for those services is not both greater than two months' rent and designed to secure performance of the rental agreement, id. §§ 562A.6(12), .12(1); see also Paul A. Gordon, Am. Seniors Housing Ass'n, The Impact of Landlord Tenant Laws on Community Fees 1 (2007) (contrasting real estate related fees, which might be subject to landlord-tenant law, with other types of fees linked to provision of services). Further, a nonrefundable entrance fee is generally not a security deposit under the IURLTA. See De Stefano v. Apts. Downtown, Inc. , 879 N.W.2d 155, 185-86 (Iowa 2016) ; see also M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc. , 195 Wis.2d 485, 536 N.W.2d 175, 186 (1995) (noting that nonrefundable fee could be a payment to secure execution of the lease and not a security deposit to ensure performance of obligations under a rental agreement).
3. Application . In this case, the entrance fee was designed to secure the position of The Reserve (Reserve) in the event of a default, not as consideration for acceptance into the facility or for continuing care services. Specifically, the rental agreement provided,
Should Applicant default under the terms of the Covenants of Occupancy, which default is not cured in a manner deemed satisfactory by the Corporation, Applicant's Residential Membership shall be terminated and all of Applicant's right, title and interest in and to such Entrance Fee, [and] such Supplemental Amount ... shall be forfeited by Applicant and become the sole and separate property of the Corporation ....
*693 In short, the Reserve used the entrance fee and supplemental amount in the manner of a rental deposit, namely, to secure performance of the rental agreement. See Iowa Code § 562A.6(12). And the entrance fee and supplemental amount were each far in excess of two months' rent, the maximum allowable amount for a rental deposit. See id. § 562A.12(1). Therefore, the entrance fee and supplemental amount charged by the Reserve were illegal rental deposits prohibited by the IURLTA.
The problem here, as Albaugh points out, is not irreconcilability of statutory provisions. Rather, the problem only arises because the Reserve structured its entrance fee and supplemental amount as rental deposits. The Reserve can charge $120,000 or more as an entrance fee and supplemental amount; it just cannot charge that amount as a rental deposit.
Consequently, Albaugh was entitled to summary judgment on the IURLTA claim.
B. Exclusivity. The provisions in the retirement facilities statute concerning entrance fees do not constitute the exclusive statutory regulation of monies collected and labeled as an entrance fee.
Can a provider regulated under the retirement facilities statute discriminate in charging entrance fees by, for example, charging a woman twice the fee as a man? The Iowa Civil Rights Act, of course, says no. See Iowa Code § 216.8(1)(b ). The majority's approach to this case might allow such discrimination, so long as both entrance fees are greater than $5000, because the regulation of entrance fees in the retirement facilities statute is considered sui generis. But there is no reason to believe the legislature intended to allow such discrimination. Meanwhile, if the requirements of the Iowa Civil Rights Act still apply to entrance fees, why wouldn't the security deposit requirements in the IURLTA also apply?[4]
Further, there is no exclusivity provision in the retirement facilities statute. By contrast, numerous other parts of the Code contain exclusivity provisions. See, e.g. , Iowa Code § 17A.23(1) (Iowa Administrative Procedure Act); id. § 85.20 (workers' compensation); id. § 216.16(1) (Iowa Civil Rights Act); id. § 600A.3(1) (termination of parental rights). "The general assembly can express its intent by omission, and we cannot 'enlarge or otherwise change the terms of a statute as the legislature adopted it.' " Homan v. Branstad , 887 N.W.2d 153, 172 (Iowa 2016) (quoting Marcus v. Young , 538 N.W.2d 285, 289 (Iowa 1995) ). If the legislature intended the provision to be exclusive, it could have *694 said so. George v. D.W. Zinser Co. , 762 N.W.2d 865, 872 (Iowa 2009).
At the same time, the legislature has included a broad savings clause in the retirement facilities statute. See Iowa Code § 523D.7(5). It says, "This chapter does not limit a liability which may exist by virtue of any other statute or under common law if this chapter were not in effect." Id. It is hard to imagine a savings clause whose plain meaning is more antiexclusive. A belief that the entrance fee provisions in the retirement facilities statute are exclusive would rewrite the statute by blue penciling the savings clause. But we do not rewrite statutes. Doe , 927 N.W.2d at 665 ; Walden , 870 N.W.2d at 843 ; In re A.M. , 856 N.W.2d at 378.
Finally, there are a number of cases supporting the view that the retirement facilities statute does not exclusively regulate monies collected and labeled an entrance fee. Two decisions from Massachusetts hold statutory provisions regulating security deposits in the state landlord-tenant law apply to "community fees" collected by a senior living facility. Hennessy v. Brookdale Senior Living Cmtys., Inc. , No. 1784CV04215BLS2, 2018 WL 4427020, at *1-4 (Mass. Super. Ct. Aug. 1, 2018) ; Gowen v. Benchmark Senior Living, LLC , No. 1684CV03972BLS2, 2017 WL 3251585, at *1-3 (Mass. Super. Ct. May 8, 2017). Similar to the savings clause in Iowa Code section 523D.7(5), the Massachusetts law regulating senior living facilities provides that the facilities "shall meet the requirements of all applicable federal and state laws and regulations." Mass. Gen. Laws Ann. ch. 19D, § 16 (West, Westlaw current through ch. 12 of 2019 1st Sess.). The Massachusetts savings clause, according to the Gowen court,
makes clear that [the state statute regulating senior living facilities] is not intended to be an exhaustive regulatory scheme that governs all aspects of assisted living operations. And it also makes clear that [the senior living facility] must comply with all laws that govern residential tenancies to the extent they apply to its facility.
Assisted living facilities can easily comply with both statutory schemes, providing supportive services in accord with [the state statute regulating senior living facilities] to a resident whose tenancy is also governed by [the landlord-tenant law]. Courts must therefore construe and apply these two statutes in a manner that gives "meaning and purpose to both.... 'so that the policies underlying both may be honored.' "
2017 WL 3251585, at *2 (quoting Alliance to Protect Nantucket Sound, Inc. v. Energy Facilities Siting Bd. , 457 Mass. 663, 932 N.E.2d 787, 796 (2010) ); accord Hennessy , 2018 WL 4427020, at *2. Further, the Gowen court explained, the senior living facility may charge a community fee for "services that are beyond the scope of a typical residential tenancy." Id.
Another Massachusetts decision disagrees with the result reached in Gowen and Hennessy . See Ryan v. Maryann Morse Healthcare Corp. , No. 1681CV02433A, 2018 WL 6424841, at *5 (Mass. Super. Ct. Jan. 9, 2018). But the rationale in Ryan supports Albaugh's position in this litigation. "First," the Ryan court noted, "[the state statute regulating senior living facilities] does not use the terms 'lease,' 'lessor' or 'tenant' employed in [the landlord-tenant law]." Id. By contrast, Iowa Code section 523D.1(8) anticipates that providers will utilize leases. Next, the Ryan court said that the community fee in the case before it was unlike fees that are "closely related to the leased property." Ryan , 2018 WL 6424841, at *5. But in our case, the entrance fee could hardly be more closely related to the *695 leased property, as it was used to secure performance of the lease obligations. "More to the point," the Ryan court continued, the Massachusetts statute regulating senior living facilities actually mentions the landlord-tenant law in one provision but not with respect to the fee at issue. Id. at *6. Of course, in Iowa, there is no such reference to the IURLTA in the retirement facilities statute (except, of course, in the savings clause which plainly provides for applicability of the IURLTA). Finally, the Ryan court said its conclusion
is bolstered by the fact that [the state statute regulating senior living facilities] provides a comprehensive set of protections to residents in [the facilities]. [The state statute regulating senior living facilities] does not displace landlord-tenant law and leave residents to fend for themselves. It provides a comprehensive list of resident rights which, generally speaking, demand fairness in the [facility]-resident relationship. These rights include privacy rights, use of personal property in the living area and eviction protections-concerns otherwise within the scope of landlord-tenant law.
Id. at *7. But the Iowa retirement facilities statute has no such protections. We cannot rely on the Ryan court's evaluation of a completely different statutory environment.
Similarly, in Jackim v. CC-Lake, Inc. , 363 Ill.App.3d 759, 299 Ill.Dec. 761, 842 N.E.2d 1113, 1120 (2005), an Illinois appellate court reviewed a different statutory and factual environment. There is no indication that the Illinois statute regulating senior living facilities contains a savings clause like that in Iowa Code section 523D.7(5). Indeed, the Jackim court found the absence of such a statement in the Illinois statute important, stating, "If the Illinois legislature intended for entrance fees paid by residents to providers in connection with life care contracts to be subject to the Security Deposit Interest Act, it could have said so ...." Id. Well, the Iowa legislature did say so in the savings clause in section 523D.7(5). There is good reason to think that the Jackim court would have come to a different conclusion had it before it the Iowa statutory scheme. Further, the Jackim court placed great weight on the fact that the plaintiffs' contract with the facility allowed the plaintiffs to move around to different apartments during their lives. Id. , 299 Ill.Dec. 761, 842 N.E.2d at 1119. According to the Jackim court, that fact precluded finding a landlord-tenant relationship which, in turn, prevented application of the security deposit regulations. Id. , 299 Ill.Dec. 761, 842 N.E.2d at 1119-20. But here, the contract between the Reserve and Shirley Voumard only gave her access to one apartment. With key factual and legal bases for Jackim being irrelevant to the situation before us, there is little persuasive value to Jackim .
C. The Savings Clause in the Retirement Facilities Statute Precludes that Statute from Preempting the IURLTA. Further, in the alternative, any irreconcilability between the retirement facilities statute and another statute must be resolved in favor of the other statute. Iowa Code section 523D.7(5) states, "This chapter does not limit a liability which may exist by virtue of any other statute or under common law if this chapter were not in effect."
In considering whether there is liability under another statute-like the IURLTA-the legislature has directed not to limit "any other statute" as if the retirement facilities statute "were not in effect." This is sweeping, unqualified language. To me, the language of the savings clause means that statutory liability arising outside of the retirement facilities statute remains in place and cannot be ousted by *696 language in the retirement facilities statute.
We often struggle with how two statutory regimes scattered throughout the Code fit together. But here, the legislature has given us an answer to the question. If there is statutory liability in another provision of the Code, the retirement facilities statute cannot trump or supersede it.
In fact, Iowa Code section 523D.7(5) trumps our ordinary approach to interpreting conflicting statutes. Ordinarily, as noted, an irreconcilable conflict between a general and specific statute is resolved in favor of the specific statute. Oyens Feed & Supply, Inc. v. Primebank , 808 N.W.2d 186, 194 (Iowa 2011). But that approach has no warrant in conflicts between the retirement facilities statute and another statute. In such instances, because of the savings clause, the other statute must prevail over the retirement facilities statute no matter the level of generality.
We cannot amend the unequivocal general savings statute through judicial legislation based on speculation that the legislature would have written the statute differently had it thought more deeply about the application of the IURLTA to the retirement facilities statute. We presume the legislature is aware of existing law. State v. Adams , 810 N.W.2d 365, 370 (Iowa 2012). The question is what the statute means, not what the legislature meant. Richardson v. City of Jefferson , 257 Iowa 709, 714, 134 N.W.2d 528, 531 (1965).
I break no new ground by following the statute. In Advest, Inc. v. Kirschner , No. 92-6656, 1994 WL 18592, at *2 (E.D. Pa. Jan. 21, 1994), the court employed similar reasoning. In Advest , the court first determined that securities transactions were covered by Pennsylvania's consumer protection law. Id. Then, the court turned to an argument that liability under the consumer protection law was displaced by the Pennsylvania Securities Act. Id. The court explained,
[Plaintiff] ... argues that since the sale of securities is already regulated by the Pennsylvania Securities Act of 1972, the [consumer protection law] was not intended to apply to securities transactions. It is true that as a rule the particular statute overrides the general, but ... for [that rule] to apply, the statutes must be irreconcilable. Here, not only may they be reconciled, the securities act expressly states: "[n]othing in this act shall limit any liability which might exist by virtue of any other statute or under common law if this act were not in effect." Thus for me to nullify liability under the [consumer protection law], because of the more specific securities statute, would be for me to construe the above language to the precise converse of plain meaning-the antithesis of apt statutory construction.
Id. (fourth alteration in original) (citations omitted) (quoting 70 Pa. Cons. Stat. § 1-506). That is the same situation we have here-the statutes may be reconciled, and even if they could not, the legislature has directed us to avoid the ordinary rule of favoring the more specific statute.
In another case, a federal district court faced the question of "whether the General Assembly 'intended the [Securities Act] and the [consumer protection law] to coexist as independent statutory mechanisms or whether the [Securities Act] is intended to provide the sole and exclusive statutory penalty for alleged' securities violations." Denison v. Kelly , 759 F. Supp. 199, 204 (M.D. Pa. 1991) (first and third alterations in original) (quoting Pekular v. Eich , 355 Pa.Super. 276, 513 A.2d 427, 433 (1986) ). The court found that the two statutes could coexist because there was no irreconcilable conflict and because
*697 the Securities Act nowhere indicates that it is intended as the exclusive statutory remedy for securities violations. In fact, as pointed out by the plaintiffs, it specifically preserves other remedies. [The Securities Act] provides, in pertinent part, that: "Nothing in this act shall limit any liability which might exist by virtue of any other statute or under common law if this act were not in effect." "Any other statute" must encompass the [consumer protection law].
Id. (quoting 70 Pa. Cons. Stat. § 1-506).
Until 2005, Iowa's Uniform Securities Act contained a provision practically identical to the savings clause in section 523D.7(5). Specifically, Iowa Code section 502.505 (2003) stated, "Nothing in this chapter shall limit any liability which might exist by virtue of any other statute or under common law if this chapter were not in effect." The only Iowa court to interpret the provision appears to be a district court. See Cheyenne Camping Ctr. Co. v. Frazer , No. LA99770, 2004 WL 5238947 (Iowa Dist. Ct. Jan. 1, 2004). The district court noted that courts in other jurisdictions faced with almost identical statutory schemes "have found that the underlying protective purpose of the statute is inconsistent with cutting off additional common law remedies." Id. The district court also noted the common practice of joining claims under the securities act with other civil tort claims. Id. (citing Kramersmeier v. R.G. Dickinson & Co. , 440 N.W.2d 873, 878 (Iowa 1989) ). On that authority, the district court found the plaintiff "is not precluded from asserting its common law causes of action while pursuing a remedy through [the securities act]." Id.
The notion of broad savings clauses preserving preexisting statutes is commonplace in securities and franchise laws, where many states have savings clauses virtually identical to that in the retirement facilities statute. In Andersen v. Griswold International, LLC , No. 14-CV-02560-EDL, 2014 WL 12694138, at *5 (N.D. Cal. Dec. 16, 2014), the court said, "The plain language of the statute preserves preexisting common law and statutes enacted before the [California Franchise Investment Law] that would apply if it had not been enacted." In Tractor & Farm Supply, Inc. v. Ford New Holland, Inc. , 898 F. Supp. 1198, 1204 (W.D. Ky. 1995) (quoting Mich. Comp. Laws § 445.1434), the court declared, "[T]he Franchise Law's remedies are cumulative; the Law clearly states '[n]othing in this act shall limit a liability which may exist by virtue of any other statute or common law if this act were not in effect.' " In Victory Lane Quick Oil Change, Inc. v. Hoss , No. 07-14463, 2009 WL 2461183, at *3 (E.D. Mich. Aug. 10, 2009), the court noted, "[T]he [Michigan Franchise Investment Law] does not limit the availability of causes of action created by other statute or common law." In Ugarte v. Atlas Securities, Inc. , No. C043720, 2004 WL 670857, at *6 (Cal. Ct. App. Apr. 1, 2004), the court explained, "[T]he Corporations Code does not interfere with existing common law causes of action." In Toyz, Inc. v. Wireless Toyz, Inc. , 799 F. Supp. 2d 737, 745 (E.D. Mich. 2011), the court stated, "The plain language of the statute does not limit any other cause of action brought under common law." In Fantastic Enterprises, Inc. v. S.M.R. Enterprises, Inc. , 143 Misc.2d 124, 540 N.Y.S.2d 131, 135 (Sup. Ct. 1988), the court denied a motion to dismiss claims of common law fraud and breach of contract on the basis of a statute of limitations in the General Business Law because the business law "explicitly states that it does not limit any liabilities which exist under common law." In *698 H.R.R. Zimmerman Co. v. Tecumseh Products Co. , No. 99 C 5437, 2001 WL 289867, at *4 (N.D. Ill. Mar. 15, 2001), the court declared, "The language [the plaintiff] relies upon is ... unambiguous in that it does not preclude any causes of action available outside of this Act." In Brennan v. Reed, Smith, Shaw & McClay , 304 Pa.Super. 399, 450 A.2d 740, 747 (Pa. Super. Ct. 1982), the court explained, "The act ... does not interfere with any independent rights of action that might exist at common law such as a suit for legal malpractice." In L.A. Insurance Agency Franchising, LLC v. Elia , No. 18-13523, 2019 WL 1515412, at *4 (E.D. Mich. Apr. 8, 2019), the court said, "[T]he Michigan Franchise Investment Law specifically protects a party's other common law contract rights ...." In Southern Illinois Beverage, Inc. v. Hansen Beverage Co. , No. 07-CV-391-DRH, 2007 WL 3046273, at *4 (S.D. Ill. Oct. 15, 2007), the court explained, "It is proper to plead [Illinois Franchise Disclosure Act] claims with common-law claims because, as the statute expressly provides, it does not preempt remedies under the common law and other statutes." In Tyszka v. Make & Take Holding, LLC , 72 A.D.3d 1620, 900 N.Y.S.2d 211, 212-13 (2010) (alterations in original), the court noted,
We agree with the determination of the court in its written decision that "[t]he final sentence of the provision preserves [preexisting] common law claims which would exist under the common law if the Act were not in effect, [but that], here, the only violation alleged as against [defendant] is aiding and abetting a violation of the Act itself, not a free-standing common law violation. For claims arising out of statutory violations of the Act, the Act itself provides the plaintiffs with their exclusive remedy.
Commentators agree with those interpretations. In Illinois, because of the savings clause, "the Franchise Act does not preempt common law and other statutory remedies." James K. Genden, A Guide to the Illinois Franchise Disclosure Act , 20 Franchise L.J. 59, 60 (2000). The savings clause in Pennsylvania's securities law "specifically directs that the remedies provided by the [securities law] are not exclusive" and that the law "was not intended to displace or supersede existing common law remedies for fraud." Kurt M. Saunders, Comment, Proof of Fault in Actions for Securities Fraud: A Cloud in Pennsylvania's Blue Sky , 46 U. Pitt. L. Rev. 1083, 1091 & n.57 (1985). "In fact, all Blue Sky [Securities] Laws are "additive"-i.e., intended to supplement other remedies available to defrauded investors." Jesse Stewart, False Conflicts: A 50-State Survey of Blue Sky Laws , 25 PIABA B.J. 383, 383 (2018).
I have found two cases taking a somewhat different approach with respect to common law claims. These cases generally conclude that California statutes were intended to displace the common law concerning particular matters. See Samica Enters., LLC v. Mail Boxes Etc. USA, Inc. , 637 F. Supp. 2d 712, 721-22 (C.D. Cal. 2008) ; Mirkin v. Wasserman , 5 Cal.4th 1082, 23 Cal.Rptr.2d 101, 858 P.2d 568, 582 (1993).
For one thing, it is not even clear that Samica and Mirkin would support the Reserve in this case. Both of those cases decided that common law claims did not survive, Samica , 637 F. Supp. 2d at 721-22 ; Mirkin , 23 Cal.Rptr.2d 101, 858 P.2d at 582, whereas Albaugh's claim is statutorily based. It is perfectly conceivable that the California legislature intended to override the common law to a greater extent than its own statutes. Further, those cases held that the common law claims did not survive because the California legislature had provided an analogous remedy. Samica , 637 F. Supp. 2d at 721-22 ; Mirkin , 23 Cal.Rptr.2d 101, 858 P.2d at 582. But here, *699 the retirement facilities statute provides no remedy where a landlord collects an illegal rental deposit. That is addressed in the IURLTA.
In any case, Samica and Mirkin were wrongly decided. Aside from being against the great weight of authority on the matter, as recounted above, the reasoning in those opinions has been specifically rejected in other judicial opinions. Toyz , 799 F. Supp. 2d at 745 (rejecting reasoning in Samica ); Mirkin , 23 Cal.Rptr.2d 101, 858 P.2d at 594-95 (Kennard, J., concurring and dissenting) (rejecting Mirkin majority); see also Christopher Boffey, Note, Mirkin v. Wasserman: The Supreme Court of California Rejects the Fraud-on-the-Market Theory in State Law Deceit Actions , 49 Bus. Law. 715, 736 (1994) [hereinafter Boffey] (same). The Samica and Mirkin courts forgot that the purpose of the purportedly preemptive statute was to protect consumers through disclosure and other requirements-just like the retirement facilities statute-by adding remedies rather than replacing them. Mirkin , 23 Cal.Rptr.2d 101, 858 P.2d at 594-95 ; Boffey, 49 Bus. Law. at 736-37. Indeed, the Samica and Mirkin courts ignored the plain meaning of the savings clauses which sought to ensure that such purpose would be achieved. Toyz , 799 F. Supp. 2d at 745 ; Mirkin , 23 Cal.Rptr.2d 101, 858 P.2d at 594-95 ; see Boffey, 49 Bus. Law. at 736 ("[I]t seems likely the [ Mirkin ] court overlooked that federal and state securities laws were not intended to provide exclusive remedies for securities transactions involving deceit. Both the California Corporations Code, and the Securities Exchange Act of 1934 include sections that make it clear the remedies created by them were intended to supplement (and not replace) remedies available under common and other statutory laws." (Footnotes omitted.)). Justice Kennard put it well:
To speak, as the majority does, of a "conflict" between securities law remedies and the traditional action for fraud is to ignore the decisions of our state Legislature and Congress to make securities laws nonexclusive and cumulative to traditional tort remedies.
Mirkin , 23 Cal.Rptr.2d 101, 858 P.2d at 595. Justice Kennard's reasoning applies with full force to the question before us concerning the relationship between the retirement facilities statute and the IURLTA.
In my view, Voumard's daughter, acting as her substitute, was entitled to partial summary judgment on the IURLTA claim. The Reserve was not entitled to summary judgment on the IURLTA claim. I would so hold, reverse, and remand the case to the district court.
III. Conclusion.
For the reasons discussed above, I would reverse the district court judgment on the IURLTA claim, grant summary judgment to Albaugh on the IURLTA claim, and remand to the district court for further proceedings.
Wiggins, J., joins this dissent.

Additionally, even as the majority believes that regulation of entrance fees in the retirement facilities statutes is sui generis, it offers no principle limiting the sui generis in the retirement facilities statute to entrance fees. Perhaps none of the IURLTA applies to facilities regulated under the retirement facilities statute. For instance, the retirement facilities statute states that a "[p]rovider" is "a person undertaking through a lease" to provide care in a facility. Iowa Code § 523D.1(8). So, the retirement facilities statute expects a provider to use a lease. Is that lease also immune from the IURLTA? Likewise, the retirement facilities statute contemplates that facilities will offer lodging. Id. § 523D.1(2). Since lodging is authorized under the retirement facilities statute, need the facility comply with requirements in the IURLTA to keep the lodging "in a fit and habitable condition" and "[s]upply running water and reasonable amounts of hot water at all times and reasonable heat"? Id. § 562A.15(2), (6).
Indeed, under the majority's reasoning, perhaps any action contemplated in the retirement facilities statute is unregulated by any other provision of the Iowa Code. The retirement facilities statute recognizes that facilities may offer nursing care, id. § 523D.1(2), (11), (12), so can facilities offer uncertified nursing care?